UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

FERRING B.V., FERRING
INTERNATIONAL CENTER S.A., AND
FERRING PHARMACEUTICALS INC.,

                  Plaintiffs,

   -against-

ALLERGAN, INC., ALLERGAN USA, INC.,
ALLERGAN SALES, LLC, SERENITY
PHARMACEUTICALS CORPORATION,
SERENITY PHARMACEUTICS, LLC,
REPRISE BIOPHARMACEUTICS, LLC,
SEYMOUR H. FEIN, AND RONALD V.
NARDI,

                 Defendants.

---------------------------------------X

12 Civ. 2650

OPINION

A P P E A R A N C E S:

       Attorneys for Plaintiffs

       GIBBONS P.C.
       One Gateway Center
       Newark, NJ  07102
       By:  Mara E. Zazzali-Hogan
           William P. Deni, Jr.

       FINNEGAN, HENDERSON, FARABOW, GARRETT
         & DUNNER, LLP
       901 New York Avenue, N.W.
       Washington, D.C.  20001-4413
       By:  James B. Monroe, Esq.
           Paul W. Browning, Esq.
           Adriana L. Burgy, Esq.

Attorneys for Defendants

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
By:  Joseph Evall, Esq.

GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612
By:  Jeffrey T. Thomas
     Jeffrey H. Reeves

ZUCKERMAN SPAEDER LLP
1185 Avenue of the Americas
New York, NY  10036
By:  James Scottile, Esq.
     Steven M. Cohen, Esq.
     Noah Solowiejczyk

**Sweet**, D.J.


Plaintiffs Ferring B.V., Ferring International Center S.A., and Ferring Pharmaceuticals Inc. (collectively, "Ferring" or the "Plaintiffs") have moved presumably pursuant to Rule 14(2) for leave to file the Second Amended Complaint ("SAC") against the defendants, Allergan, Inc., Allergan USA, Inc., Allergan Sales, LLC (collectively "Allergan"), Serenity Pharmaceuticals Corporation, Serenity Pharmaceuticals, LLC (collectively "Serenity"), Reprise Biopharmaceutics, LLC ("Reprise"); Seymour H. Fein ("Fein"), and Ronald V. Nardi ("Nardi") (collectively, the "Defendants").  For the reasons set forth below the motion is denied.


This action presents a dispute over the ownership of certain patents involving desmopressin, a synthetic hormone, used to treat disorders related to excessive urine production. According to the Plaintiffs, Fein, Nardi and their companies Serenity and Reprise improperly obtained the patents at issue starting in 2003 and in selling them to Allergan violated certain duties and obligation to which Allergan was compliant. According to the Defendants, the Plaintiffs have delayed advancing their claims and this litigation in order to impose

2

the risks and costs of drug development on Allergan and then to obtain patent correction in their favor. The proceedings in the action to date lend some credence to the Defendants' position.

## **Prior Proceedings & Facts**

Familiarity with the prior proceedings and facts as alleged in the initial complaint filed by Ferring on April 5, 2012 is assumed and were set forth in the March 18, 2013 order (the "March 18 Order") granting Defendants' motion to dismiss.

The Plaintiffs' motion to reconsider the March 18 Order was denied on August 5, 2013 (the "August 5 Order"). The August 5 Order denied a request to amend as in violation of the March 18 Order, but "without prejudice to permit Ferring to move for leave to amend in compliance with the Marcy 18 Order." See id. at 10.

Plaintiffs served their First Amended Complaint (the "AC" or "previous Complaint") on August 21, 2013, and simultaneously served the instant motion for leave to file a Second Amended Complaint (the "SAC") seeking to restore the 14 claims dismissed by the March 18 Order.

3

The instant motion was heard and marked fully submitted on October 23, 2013.

## The Applicable Standard

The party opposing a motion to amend bears the burden of establishing that an amendment would be futile. See Blaskiewicz v. County of Suffolk, 29 F.Supp.2d 134, 137-38 (E.D.N.Y. 1998) (citing Harrison v. NBD Inc., 990 F.Supp. 179, 185 (E.D.N.Y. 1998)).

While leave to amend should be "freely give[n] . . . when justice so requires," district courts "ha[ve] broad discretion to decide whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000). Leave to amend is properly denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of the amendment." Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

4

"A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). Therefore, "[f]or the purposes of evaluating futility, the 12(b)(6) standard is applied: all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." E*Trade Fin. Corp. v. Deutsche Bank AG, 420 F.Supp.2d 273, 282 (S.D.N.Y. 2006) (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)).

**The Motion to Amend With Respect to all Counts is Denied as Futile Because the Claims Remain are Time-Barred or are Otherwise Deficient**

The claims asserted by Ferring in the proposed SAC are futile because the new allegations do not cure the time-barred nature of the claims or are otherwise deficient.

The entirety of the amended claims asserted by Ferring, Counts 4-17, were dismissed as time-barred from the face of the AC in the March 18 Order properly and with prejudice. (See March 18, 2013 Order, at 20 (citation

5

omitted).)  As such, leave to amend these claims is denied as
futile.  See Wallace v. NYC Dept. of Corrections, 112 Fed. Appx.
794, 795 (2d Cir. 2004) (affirming denial of leave to amend due
to futility because statute of limitations had run); see also
Troni v. Holzar, 2010 WL 3154852, at *2-5 (S.D.N.Y. July 29,
2010) (dismissals based on untimeliness operate as dismissals
with prejudice and should not be revisited).

        With respect to claims 4-6, 10-11, and 12-14, Ferring
has maintained that its claims are actually timely because it
has added allegations of post-2003 conduct to the SAC that
brings the claims within the limitations period.  Specifically,
Ferring points to two forms of post-2003 conduct that it claims
alters the time-barred nature of the claims: Fein's and Nardi's
(i) sharing of confidential, trade secret, proprietary, and
privileged information and documents with Allergan, Serenity and
Reprise and (ii) use of Ferring's confidential, trade secret,
proprietary, and privileged information and documents to design
and conduct the clinical studies of the desmopressin
formulations and to obtain and commercialize the patents. (SAC
¶¶ 120, 126, 226, 228, 231-34, 244-45, 248-51, 260, 262-64, 266,
274, 276-78, 280, 292-93, 298, 300, 313-14, 319-21, 335, 336-39,
341, 349-52, 358, 370-71, 373-75, 378.)

6

These allegations fail to save the claims because (i) allegations regarding this same post-2003 conduct were before the Court on the motion to dismiss and denied, and (ii) the statute of limitations began to accrue with respect to these claims at the time of the initial alleged wrongful acts in 2003, not when further alleged wrongful acts occurred.

First, the allegations regarding the sharing of documents with Allergan, as well as Reprise and Serenity, were previously asserted with respect to Counts 6 through 14 in the AC and considered by the Court when it dismissed these claims. (See generally March 18 Order.)  Ferring already alleged that Nardi and Fein provided Ferring confidential, trade secret, proprietary, and privileged information to Allergan, Serenity, and Reprise "for use in activities adverse to Ferring's interest." (See AC ¶¶ 187, 200 (Counts 6-7); ¶¶ 212, 221 (Counts 8-9); ¶¶ 234, 250 (Counts 10-11); ¶ 267 (Count 12); ¶ 277 (Count 13); 292 (Count 14).) Ferring also alleged in the AC that Nardi and Fein, in collaboration with Serenity and Reprise, made "use of the confidential and proprietary Ferring documents" and information in designing and conducting clinical trials, as well as in obtaining and commercializing the patents. (See AC ¶¶ 189,

7

201 (Counts 6-7); ¶¶ 213, 222 (Counts 8-9); ¶¶ 235, 251 (Counts 10-11); ¶ 268 (Count 12); ¶ 280 (Count 13); ¶ 295 (Count 14).) These exact allegations were rejected for timeliness, and as such any amendments based on these same allegations would be futile.

     Second, even if it is concluded that Ferring had alleged "new" post-2003 conduct, the March 18 Opinion already ruled that allegations regarding later conduct would not make the claims timely, a conclusion reiterated in the August 5 Order denying the motion for reconsideration. (See generally March 18 Order.)  Claims 4-7, 10-11 and 12-13 all began to accrue when the first actionable alleged breach or tortious act occurred, and as such allegations regarding later conduct do not affect the statute of limitations. (See August 5, 2013 Opinion (Dkt. No. 67) (noting that Ferring's "timelines arrang[ing] post-2003 conduct that the Court previously found irrelevant" failed to provide a basis to support reconsideration).)

     Separately, with respect to Counts 4-5, 10-11, 14-15 and 17, Ferring attempts to avoid the time-bar by contending that the proposed SAC has pled adequate claims against Reprise and Serenity because it now alleges that these entities were

8

"alter egos" of Fein and Nardi and thus can be held liable for Fein's and Nardi's actions. (See Plaintiff's Brief in Support of Leave to Amend, "Pl. Br."; at 7, 12, 13, 17, 25; SAC ¶¶ 111, 142, 208, 222, 233, 250, 263, 277, 299, 302, 320, 323, 424, 430.)

Ferring already alleged in its AC that Fein and Nardi were principals of and equity participants in Reprise, and that they were officers and played a role in incorporating Serenity. (AC ¶¶ 82, 84, 105-08).  The March 18 Order rejected Ferring's contention that Serenity and Reprise were liable for Fein's and Nardi's conduct based on these positions within those companies. (See, e.g., March 18 Order, at 23 (dismissing Counts 4 and 5 with respect to Reprise and Serenity because Ferring nowhere alleged that Reprise or Serenity had the requisite relationship with or obligation to assign the patents to Ferring and because the claims were time-barred).)  A conclusory allegation that Reprise or Serenity are "alter egos" of Fein or Nardi adds nothing to what was already before the Court on the motion to dismiss, and provides no basis for revisiting the Court's prior determination that Reprise and Serenity simply have no legal obligation to Ferring. See, e.g., Brainstorms Internet Mktg. v. USA Networks, Inc., 6 A.D.3d 318, 318-19 (1st Dep't 2004)

9

("conclusory allegations" regarding alter ego status were
insufficient and were properly dismissed); Bonanni v. Straight
Arrow Publishers, Inc., 133 A.D.2d 585, 586-87 (1st Dep't 1987)
(amended complaint containing only a legal conclusion with no
factual allegations supporting the alter ego claim should be
dismissed).

Even if Ferring had adequately plead its "alter ego"
theory with the requisite specificity, Reprise and Serenity did
not exist when the alleged wrongful conduct by Fein and Nardi
occurred, nor did they exist when Fein or Nardi assumed the
contractual or common law duties creating the requisite
relationship to state a claim.  See WorldCom Network Servs. v.
Polar Communications Corp., 278 A.D.2d 182 (1st Dep't 2000)
(evidence that three individuals who formed the original company
were thereafter employed by another company is insufficient to
infer a relationship between the two companies, much less a
relationship sufficiently close to serve as a predicate for the
imposition of successor liability); Amalgamated Tr. Union Local
1181, AFL-CIO v. City of New York, 45 A.D.3d 788, 790, (2d Dep't
2007) (Under New York Law, "an assignee or successor will not be
bound to the terms of a contract absent an affirmative
assumption of the duties under the contract").  The Court has

10

already recognized that this fundamental defect in Ferring's claims against Reprise and Serenity requires dismissal. (See, e.g., March 18 Order, at 23 ("Counts 4 and 5 assert that Nardi and Fein are obliged to assign patents to Ferring by virtue of associations with Ferring that ended in 2002, several years before Reprise or Serenity were even formed. Thus, Counts 4 and 5 are also dismissed with respect to Reprise or Serenity because Ferring nowhere alleges that Reprise or Serenity had any relationship or obligation to Ferring.").)

In addition to Ferring's broad assertions of post 2003 conduct with respect to timeliness and its alter ego theory with respect to Fein and Nardi, each of Ferring's specific proposed amended claims also fail to cure the deficiencies as addressed in the March 18 Order, or present any new allegations upon which a valid cause of action could be based. See Lucente v. I.B.M. Corp., 310 F.3d 243, 258 (2d Cir. 2002). Accordingly, a Count by Count discussion of why each amended claim fails follows.

## I. Counts 4 and 5 (Patent Ownership) Remain Time-Barred and are in any event Meritless

Plaintiffs' have realleged counts 4 and 5, seeking ownership of patents-in-suit, asserting that as amended the

11

claims would sound in replevin, and that their limitations period did not begin to run until early 2012, when there was "demand and refusal." (See Pl. Br. (Dkt. 71) at 6-7, 24.)

Counts 4 and 5 have already twice been dismissed with prejudice. (See Mar. 18 Order at 23-24 ("Count 4 sounds in breach of contract, not replevin, . . . .") (emphasis added); id. at 25-26 (Claim 5 accrued in 2003, not at demand-and-refusal); see also Aug. 5 Order (denying motion for reconsideration, which included replevin argument).) Dismissal "with prejudice . . . signifies that the court intended to dismiss the action 'on the merits,'" and "bring the action to final conclusion." Yonkers Constr. v. Port Auth., 93 N.Y.2d 375, 380 (1999).

As held in the March 18 Order and reaffirmed in the August 5 Opinion, the claims sound in contract, not replevin. (See id. at 23-24). Plaintiffs' baseless attempt to recast Claims 4 and 5 as actions for replevin, so that the statute of limitations does not begin to run until "demand and refusal," fails for the same reasons as previous articulated: "where, [as here,] a plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory."

12

Usov v. Lazar, No. 13-cv-818, 2013 WL 3199652 at *7 (S.D.N.Y.
June 25, 2013) (dismissing plaintiff's replevin claim because
"where a plaintiff is essentially seeking enforcement of the
bargain, the action should proceed under a contract theory")
(quotation marks and citation omitted).

Accordingly, Counts 4 and 5 are subject to the patent
ownership six-year statute of limitations, under which both
counts accrued when Plaintiffs learned of the patent application
in 2002 and under which both claims are therefore time-barred.
(See Dkt. 57 at 24-26.)

Plaintiffs' "new" assertion that these claims accrued
in 2012 has already been twice before this court without
success.  (See Dkt. 49 at 13; Dkt. 60 at 7.)  As the March 18
Order explains: "The latter accrual period [] applies only if
defendants' alleged acquisition of the Ferring documents and
patents-in suit were lawful. However, Ferring has pled that the
acquisition was unlawful." (See Mar. 18 Order at 41); see also
Kunstsammlungen Zu Weimar v. Elicofon, 678 F.2d 1150, 1161 (2d
Cir. 1982).  Plaintiffs still allege that the acquisition was
unlawful; accordingly the demand-and-refusal rule still does not
apply.

13

As to Allergan specifically, the March 18 Order concluded held that third-party transferees of allegedly misappropriated patents—such as Allergan—are not proper defendants in ownership actions. (See March 18 Order, at 22.) Plaintiffs now cites Solomon R. Guggenheim Found. v. Lubell, 77 N.Y.2d 311 (1991) to overcome this rule.  Yet Lubell concerns the special rules that apply to good faith purchasers; by contrast, Plaintiffs here repeatedly allege that Allergan is anything but a good-faith purchaser. (See, e.g., SAC ¶¶ 204, 218.)  Moreover, Lubell involves the sale of tangible property (i.e., fine art); it says nothing about the proper defendants in a patent ownership action such as this (replevin, like conversion, does not apply to patentable ideas).  Further, since the claims sounded in contract, the Court also dismissed them because Allergan was not involved in the inventions claimed in the patent, and was neither a party to, nor a beneficiary of, Nardi's and Fein's alleged obligations to Ferring.  (See id. at 22.)  Because Allergan still is not alleged to have any involvement with Fein's and Nardi's work until 2010, Ferring again fails to allege the requisite relationship to support a patent ownership claim.  (Id.)

14

Finally, Plaintiffs' amended ownership claims are also barred by laches, which applies where, as here, (1) the plaintiff knew, or should have known, of his claim; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendants were prejudiced as a result. See Solow Bldg. Co., L.L.C. v. Nine West Group, Inc., No. 00-cv-7685, 2001 WL 736794, at *3 (S.D.N.Y. June 29, 2001). "When the defense of laches is clear on the face of the complaint," the claim should be dismissed. See id. (dismissing claims with prejudice).

Each element of laches is pled. First, Plaintiffs admit that they were aware of Fein's patent applications in 2003, (see SAC ¶ 75), and were thus on notice of their claims for ownership at that time. (See Mar. 18 Order at 24-25); see also Board of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 583 F.3d 832, 847-48 (Fed. Cir. 2009) (claims for ownership accrue upon constructive knowledge of the patent application). Second, despite knowing about the applications, subsequent filings, and issuances of these patents, (see SAC ¶¶ 95-101), as well as the announcement of the lucrative Allergan-Reprise-Serenity agreement in 2010, (id. ¶ 110), Plaintiffs did not file suit until nearly nine years after the applications were filed. Third, Allergan has alleged both

15

evidentiary and economic prejudice as result of Plaintiffs'
undue delays, including significant monetary investments (such
as the cost of clinical trials). (Id. ¶ 118); see also
Serdarevic v. Adv. Med. Optics, Inc., 532 F.3d 1352, 1360 (Fed.
Cir. 2008); cf. ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52
F.3d 1062, 1065 (Fed. Cir. 1995) (in the context of estoppel,
the cost of procuring patents and developing products constitute
economic prejudice).


     Plaintiffs have contended that Hor v. Chu, 699 F.3d
1331 (Fed. Cir. 2012) makes laches inapplicable. (See Dkt. 60 at
1, 4; Dkt. 66 at 2-3.)  However, that decision, which relies on
the language and procedures of the federal patent law for
establishing inventorship, applies to inventorship claims under
federal patent law, not ownership claims under state law, as
asserted here. See Hor, 699 F.3d at 1335 (explaining that "the
language of the provision [§ 256] requires" accrual to begin at
patent issuance); (see also Mar. 18 Order at 19 (describing the
Hor court's reliance on "the statutory language of § 256 to
confirm that [laches] cannot begin, until the patent actually
issues" for "inventorship claims").)  In Hor, the Federal
Circuit was precluded by statute from giving effect to the
important policy considerations underlying laches, including the

16

cost of undue delay, which appears apt with respect to
Plaintiffs' assertions:

> Without the threat of laches . . . the omitted
> inventor [or owner] is encouraged to remain
> silent as the applicant [or assignee] bears the
> costs of prosecution and garners potentially
> lucrative licenses. Then, once the patent issues,
> the omitted inventor can claim entitlement to the
> fruit of the applicant's labors.

Hor, 699 F.3d at 1340 (Reyna, J., concurring). Because the
statute in Hor does not apply to the state law claims asserted
by Ferring, and because each element of laches is adequately
pled, these policy considerations must be given effect and
Plaintiffs' claims are appropriately barred by laches.

For the reasons articulated, any amendments to Counts
4 and 5 would be futile and leave to amend is denied. See Mahmud
v. Kaufmann, No. 05-cv-8090, 2010 WL 2079556, at *2 (S.D.N.Y.
Apr. 15, 2010) (Under the law-of-the-case doctrine, "courts
should be loathe to revisit prior decisions of its own or of a
coordinate court in the absence of extraordinary
circumstances.") (punctuation and citation omitted).

## II. Counts 6 and 7 (Breach of Common Law Duty) Remain Time-Barred and are in any event Meritless

17

Ferring has contended that it has "amended Counts 6 and 7, [for Breach of Common Law Duty], to clarify that Fein's and Nardi's breaches, respectively, are not limited to the 2003 timeframe, but rather occurred during various timeframes, including as recently as the 2010-2013 timeframe." (SAC ¶¶ 111, 142, 208, 222, 233, 250, 263, 277, 299, 302, 320, 323, 424, 430.)

The March 18 Order determined that Counts 6 and 7 "are governed by a six-year statute of limitations that begins accruing 'when all elements of the tort can be truthfully alleged in a complaint,'" and that the filing of the patent application in 2003 was the moment the breach of duty claims could have first been asserted and thus when the statute of limitations began to accrue. (See March 18 Order, at 28.) Because the initial complaint was filed more than six years after 2003, the claims were dismissed as time-barred. (Id.) Ferring's "new" allegations of post-2003 conduct were already before the Court on the motion to dismiss and do not change when the claim began to accrue; thus, the new allegations provide no basis for granting leave to amend for the reasons stated above. See supra at 6-8.

18

In addition to dismissing Counts 6 and 7 as time-barred, the March 18 Order dismissed Count 7 because, among other reasons, the claim is duplicative of the breach of contract claims.  (See March 18 Order at 28.)   Ferring now contends that it has "amended Count 7 to clarify that the common law duties owed to Ferring by Nardi are broader than, and distinct from, the contractual duties owed to Ferring by Nardi by virtue of Nardi's Employment and Severance Agreements."  (SAC ¶¶ 240-41.)   Ferring has cited Paragraphs 240 and 241 of the SAC for this proposition, but these paragraphs remain unchanged from the previous Complaint. The only new allegation asserted is the conclusory sentence that "Nardi's common law duties extend beyond the terms and obligations of his Employment and Severance Agreements with Ferring."  (Id.)   The basis of these duties are still not explained as different from Nardi's contractual duties, nor does Ferring allege any other specifics or new evidence to alter the findings of the prior dismissal. Count 7 thus remains duplicative of the breach of contract causes of action.

As to Serenity and Reprise, the March 18 Order dismissed counts 6 and 7 against these entities for the

19

additional reason that neither Reprise nor Serenity had the
requisite relationship with Ferring that "would give rise to any
common law duties." (March 18 Order at 28-29.)  Ferring's
assertions that Reprise and Serenity are "alter egos" of Fein
and Nardi does not cure this deficiency and provides no basis
for granting leave to amend for the reasons stated above. See
supra at 8-10.

        Because even as amended Counts 6 and 7 fail to state
an adequate cause of action and are time-barred, leave to amend
is denied.

### III. Counts 8 and 9 (Aiding and Abetting Breach of Common Law Duties) Remain Time-Barred and are in any event Meritless

        Plaintiffs' eighth and ninth claims assert that
Allergan aided and abetted Fein's and Nardi's breach of common
law fiduciary duties.

        The tort of aiding and abetting breaches of a common
law duty does not encompass a "should have known" standard;
actual knowledge of "the primary violator's status as a
fiduciary and actual knowledge that the primary violator's
conduct contravened a fiduciary duty" is required. See Mazzaro

de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 393

(S.D.N.Y. 2007) (citation omitted). Plaintiffs "must [] allege

facts, in non-conclusory terms, to show knowing participation by

defendants in the alleged breach." Musalli Factory for Gold &

Jewellry v. J.P. Morgan Chase Bank, N.A., 261 F.R.D. 13, 24

(S.D.N.Y. 2009) (citation omitted) (dismissing aiding and

abetting claim).


The March 18 Order dismissed Counts 8 and 9 because

Ferring had not alleged that Allergan "knowingly induced or

participated in" any breach with the requisite specificity, see

Palmetto Partners, 83 A.D.3d at 808, and because the Counts were

untimely. (See March 18 Order at 30-33.)


Plaintiffs' proposed amendments do not in any way

buttress the threadbare, speculative allegations that were

previously held inadequate to support Plaintiffs' claims. (See

id.) To the contrary, the SAC recapitulates the same

unsupported chain of inferences—namely, that Allergan "knew" of

Fein's and Nardi's obligations based on "due diligence" and/or

Allergan's alleged inspection of documents that "reveal" Fein's

and Nardi's employment histories. (Cf. AC ¶ 212 with SAC ¶

261.) Even if believed, these allegations, namely that Allergan

21

knew of Fein's and Nardi's former employment at Ferring
(employment that terminated eight years before the alleged
breach), do not support Plaintiffs' claim: knowing about a
former job, in and of itself, does not support a finding that
there once were (or are) fiduciary obligations. See Global
Minerals & Metals Corp. v. Holme, 35 A.D.3d 93, 102 (1st Dep't
2006) (knowledge of the allegedly breached fiduciary duties
cannot be inferred from knowledge of primary tortfeasor's
employment).

Counts 8 and 9 were additionally dismissed because
Plaintiffs' complaint did not adequately plead that Allergan
provided Fein and Nardi with "substantial assistance," as is
required to state a claim for aiding and abetting.  (See March
18 Order at 31.)

Plaintiffs now assert that this "substantial
assistance" derived from Allergan's development of
pharmaceutical products, (see Opp. Br. at 16) and from Allergan
"gain[ing] knowledge from Ferring documents," (see SAC at ¶
261).  Both of these assertions fail for independent reasons.

22

First, when the "sum total of Plaintiffs' allegations concerning the [] Defendants' substantial assistance" are "not [] unusual activit[ies] for those in the [defendants'] business," such allegations "hardly constitute[] assisting in a breach of fiduciary duty." See Kaufman v. Cohen, 307 A.D.2d 113, 126 (1st Dep't 2003) (dismissing aiding and abetting claims against commercial real estate developers for assisting an alleged fiduciary in acquiring interest in a building). Plaintiffs' allegations here fail because they merely assert that Allergan assisted in developing drugs—the precise activities one would expect from a pharmaceutical company such as Allergan. See also Roni LLC v. Arfa, 72 A.D.3d 413, 413-14 (1st Dep't), aff'd, 15 N.Y.3d 826 (2010) (dismissing the aiding and abetting claim because, "[a]t most, the documentary evidence indicates that the attorney defendants structured and organized entities that acted as the brokers on the property acquisitions and collected commissions—activities which are part of ordinary real estate lawyering").

Second, unless an aider and abettor owes a fiduciary duty directly to the plaintiff—a fact that Plaintiffs here have not pleaded and cannot plead—the "substantial assistance" necessary for an aiding and abetting claim requires affirmative

23

acts to assist the breach or to help conceal the breach; mere
inaction is insufficient. See Mazzaro de Abreu, 525 F. Supp.2d
at 390.  Plaintiffs' rely on Allergan's alleged acceptance of
Ferring confidential information to demonstrate such an
"affirmative act", but "simply receiving [] documents" does not
constitute substantial assistance.  Watts v. Jackson Hewitt Tax.
Serv. Inc., 675 F. Supp.2d 274, 281 (E.D.N.Y. 2009); see also
Catskill Dev., L.L.C v. Park Place Entm't Group, 547 F.3d 115,
136 (2d Cir. 2008) ("knowing acceptance of benefits . . . is
insufficient to sustain a claim for participating in the breach
of fiduciary duty" by aiding and abetting).


     In short, aiding and abetting requires substantial
assistance of an actual breach of a known fiduciary duty, and
Plaintiffs have failed to adequately allege any of these
elements. See Mazzaro de Abreu, 525 F. Supp.2d at 388 ("The
first element of aiding and abetting breach of fiduciary duty is
the breach by a fiduciary of obligations to another party.");
cf. Palmetto Partners v. AJW Qualified Partners, LLC, 83 A.D.3d
804, 809 (2d Dep't 2011).  As such, any amendments to Counts 8
and 9 would be futile and leave to amend is denied.

## IV.  Counts 10 and 11 (Breach of Contract) Remain Time-Barred and are in any event Meritless

24

With respect to Counts 10 and 11 for breach of contract, Ferring once again contends that it can sue Defendants Reprise and Serenity for breach of a contract that they are not parties to or assignees of, contrary to the March 18 Order and well-established precedent. (See March 18 Order at 33-34.)  "It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Crabtree v. Tristar Auto. Group, Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991).

With respect to all Defendants except Nardi, the March 18 Order dismissed the breach of contract claims because, in addition to being time-barred, no contractual relationship existed with Ferring.  Ferring still is unable to plead any facts supporting the requisite relationship by Defendants to Ferring for breach of Nardi's Employment Agreement or Severance Agreement, that there was a formal assignment of the contracts, or that Reprise or Serenity assumed Nardi's obligations under

his employment contracts with his prior employer.   As such,

leave to amend Counts 10 and 11 would be futile.[1]


With respect to Nardi, leave to amend Counts 10 and 11

is also denied because Counts 10 and 11, even in their amended

form, remain time-barred.  As held in the March 18 Order, "[t]o

the extent Nardi breached any contract by using Ferring

information to develop desmopressin products or assist in

obtaining patents, those breaches accrued no later than 2003,

when Fein first pursued his patent application independently."

(March 18 Order at 34.)  All of Ferring's purported new

allegations of post-2003 conduct were already addressed and

dismissed in the March 18 Order and do not change when the claim

accrued. See supra at 6-8.


Accordingly, leave to amend Counts 10 and 11 would be

futile as to all Defendants.

### V.  Count 12 (Interference with Contractual Relations) Remains Time-Barred and is in any event Meritless

---

[1] Ferring's effort to hold Reprise and Serenity liable for breach of contract
under the "alter ego" theory likewise fails and provides no basis for
granting leave to amend for the reasons stated above. See supra at 8-10.

26

Count 12 was dismissed in the March 18 Order because
Ferring failed to plead requisite elements of "a claim for
intentional interference with contractual relations," including
that Allergan (1) had "actual knowledge," or (2)intended to
"induce any contractual breaches." (March 18 Order at 35 (citing
Jones v. City Sch. Dist. Of New Rochelle, 695 F. Supp. 2d 136,
148 (S.D.N.Y. 2010) (stating that intentional inducement is a
necessary element of the claim)).)

Plaintiffs' proposed amendment still fails to
adequately plead either of the requisite elements.

First, the SAC does not add any allegations evidencing
that Allergan had actual knowledge of the Employment and
Severance Agreements (the "Agreements") that Nardi allegedly
breached. (See Mar. 18 Order at 35 (citing Mina Inv. Holdings
Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 356 (S.D.N.Y. 1998)).)
The Court has already rejected Plaintiffs' contention that the
bare assertion that Allergan's putative "due diligence" and
inspection of documents supports the conclusion that Allergan
"knew" of Nardi's executive position at, and ongoing contractual
obligations to, Ferring. (See id. at 32 ("There is no allegation
that Allergan saw or even knew of Nardi's employment or

27

Severance Agreements.").) Plaintiffs have provided no reason to
revisit that finding.  To the contrary, Plaintiffs concede that
Allergan did not become aware of the Agreements until February
7, 2012 (SAC ¶ 333)—years after the allegedly induced breaches
occurred. See Spinap Corp. v. Cafagno, 302 A.D.2d 588, 588 (2d
Dep't 2003)).

Plaintiffs' new allegations of willful blindness are
similarly insufficient to infer actual knowledge: "actual
notice" is required, and "allegations of constructive knowledge,
or a duty to inquire, are inadequate to constitute an
enforceable claim". Business Lenders, LLC v. PKR Stores, LLC,
2010 N.Y. Slip Op. 32831 (Sup. Ct. 2010); see also Martian
Entm't, LLC v. Harris, 12 Misc.3d 1190(A) (N.Y. Sup. Ct. 2006)
(tortious interference claim "is defective on its face," as
"plaintiff [] failed to allege that defendant was aware of the
terms of plaintiff's agreement").

Second, the only potentially relevant new allegation,
that Allergan intended to interfere with Nardi's agreements, is
the conclusory statement that "[u]pon information and belief,"
Allergan "actively, knowingly, and intentionally" requested,
shared, and used Ferring's confidential information. (See SAC ¶

28

336.) That statement, lacking any factual underpinning—or even the basis of the "information and belief" on which the allegations are pled—do[es] not fulfill even the liberal [pleading] standard of Rule 12(b)(6)." See 150 E. 58th St. Partners, L.P. v. Wilkhahn Wilkening & Hahn GmbH & Co, No. 97-cv-4262, 1998 WL 65992, at *2 (S.D.N.Y. Feb. 17, 1998). Similarly, the proposed amendment that Allergan "intended to cause contractual breaches" without any accompanying supporting evidence likewise fails; "[t]he law requires some factual specificity in pleading tortious interference." See 150 E. 58th St. Partners, 1998 WL 65992, at *1.

Because Plaintiffs' proposed allegations are inconsistent with the pleading of "actual knowledge," and fail to show any intention to interfere by Allergan, any amendment would be futile.  See A A Test Tube Co. v. Sohne, 20 A.D.2d 639, 639 (2d Dep't 1964) (dismissing allegations of tortious interference for improperly pleading that the defendant "knew or should have known" "of a particular contract in question").

Independently, an essential element of tortious interference with contractual relations claim is an actual breach of contract. See, e.g., NBT Bancorp, Inc. v.

29

Fleet/Norstar Fin. Group, 87 N.Y.2d 614, 620 (1996).
Consequently, if the claims for breach of contract (Counts 10
and 11) are futile, see supra at 25-26, as here, so too must be
the claim for tortious interference (Count 12).

With respect to timeliness, Ferring also maintains
that the new allegations of post 2003 conduct remedy the time-
barred nature of Count 12, which was dismissed in the March 18
Order under the applicable statute of limitations. (See March 18
Order at 35-36.)

The three year statute of limitations for interference
with contractual relations begins running "at the time the
injury is sustained."  (Id.)  "Because the injury allegedly
suffered by Ferring as a result of assistance in developing and
obtaining desmopressin patents occurred in 2003, when the
alleged contractual interference caused Fein to file his patent
applications," the March 18 order held that Ferring's claims
accrued in 2003 and were dismissed as time barred.  (Id.) The
later post 2003 events cited by Ferring were already in the AC,
and, in any event, do not alter when the claim accrued.  See
supra at 6-8.

30

Because the amended Count 12 fails to state a valid cause of action and is time barred, leave to amend is denied.

## VI.  Count 13 (Misappropriation of Trade Secrets) Remains Time-Barred and is in any event Meritless

Count 13 for misappropriation of trade secrets was previously dismissed in the March 18 Order because no requisite relationship between Allergan and Ferring was adequately pled, and even if it were, the facts alleged were insufficient to constitute "improper means."  (See March 18 Order at 38-39.)

To state a claim for misappropriation, a plaintiff must allege that "(1) it possessed a trade secret, and (2) defendants are using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." See Geritex Corp. v. Dermatite Indus., LLC, 910 F. Supp. 955, 961 (S.D.N.Y. 1996) (quotation omitted).

Conceding that Allergan has not acted in breach of an agreement with Ferring, a confidential relationship with Ferring, or a duty to Ferring, (see Mar. 18 Order at 38 (citing Dkt. 48 at 23)), Plaintiffs essentially propose to simply insert the phrase "improper means" into their already-dismissed

31

allegations, without identifying or describing any specific improper conduct. (See SAC at ¶ 353.)

Specifically, Plaintiffs contend that the SAC suggests that Allergan's improper means involved knowingly accepting trade secrets from Fein and Nardi[2], (see Opp. Br. at 21), an argument Plaintiffs have made, without success, twice before. (See Dkt. 49 at 12; Dkt. 60 at 21.) Plaintiffs' conclusory inferences—namely that Allergan "knew" of Fein's and Nardi's obligations based on "due diligence" and/or Allergan's alleged inspection of documents—still do not provide adequate facts to support an allegation of improper means. Indeed, a "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," is inadequate as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Similarly, Ferring's allegation that Allergan misappropriated Ferring trade secrets by "disclosing []

---

[2] Plaintiff's reliance on Anacomp, Inc. v. Shell Knob Servs., Inc., No. 93-cv-4003, 1994 WL 9681 (S.D.N.Y. Jan. 10, 1994) to show that misappropriation "does not require that the defendant himself breach a duty" is misplaced. Id. There, the defendant corporation was on notice that it was soliciting and receiving trade secret information because the corporation's principals were former employees of the plaintiff. Similarly, in Fabkom, Inc. v. R.W. Smith & Assocs., No. 95-cv-4552, 1996 WL 531873 (S.D.N.Y. Sept. 19, 1996), the defendants were given (and then violated) specific instructions to avoid using the plaintiff's confidential programming. No such facts are pled here.

documents containing such trade secret information to the
District Court of The Hague," already pled in the AC, is
unsupported. (SAC ¶ 355.) Regardless, the submission of
documents to The Hague as part of a judicial proceeding cannot
constitute trade secret misappropriation. (See Mar. 18 Order at
38-39 ("Ferring alleges only that defendants' evidentiary
submissions in The Hague were adverse to Ferring's interest, but
does not plead any actual damages resulting therefrom.").)

        In addition, a claim for misappropriation requires bad
faith, see Abe's Rooms, Inc. v. Space Hunters, Inc., 38 A.D.3d
690, 692-93 (2d Dep't 2007), yet the proposed SAC does not even
include a conclusory assertion that Allergan acted with "bad
faith"—let alone factual allegations that would support such a
finding or even that Allergan was aware of Fein's and Nardi's
alleged obligations to Ferring. See LoPresti v. Mass. Mut. Life
Ins. Co., 30 A.D.3d 474, 476 (2d Dep't 2006) (dismissing unfair
competition claim because "the complaint failed to allege [] bad
faith misappropriation"); see also Bulger v. Royal Doulton, PLC,
No. 05-cv-7709, 2006 WL 3771016, at *8 (S.D.N.Y. Dec. 19, 2006)
(dismissing with prejudice plaintiffs' unfair competition claim,
as it only contained a conclusory allegation that the

33

defendants' conduct was "willful, malicious, oppressive, and committed with actual or constructive knowledge").

In terms of timeliness, Ferring also maintains that the new allegations of post 2003 conduct remedy the time-barred nature of Count 13.

Under New York law "misappropriation claims must be brought within three years of 'when the defendant discloses the trade secret or when he first makes use of the plaintiff's ideas.'" (March 18 Order at 39 (quoting Synergetics USA, Inc., 2009 WL 2016872, at *2).) As such, the "three-year limitations period began in 2003, when Fein first applied for patents covering desmopressin formulations," more than three years before the filing of the initial Complaint. (Id. at 39-40) Though Ferring again contends that it has added reference to post-2003 events that render the claim timely, these events were already before the Court on the motion to dismiss, and cannot change when the claim accrued. See supra at 6-8.

Nor does Ferring's continuing tort theory bring Count 13 within the limitations period: for misappropriation to be a "continuing tort" such that the statute runs from each

34

successive alleged misappropriation, the defendant must "keep the secret confidential yet make use of it to his own advantage." Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co., 297 F. Supp. 2d 463, 488 n.20 (N.D.N.Y. 2003). Here, Plaintiffs allege the opposite, that Defendants disclosed Ferring's so-called trade secrets. (See SAC ¶ 123 (asserting that Fein "disclosed information confidential and proprietary to Ferring" in his patent application).) Accordingly, Count 13 accrued in 2003, and any alleged later conduct cannot render the claim timely. See Synergetics USA, Inc., 2009 WL 2016872, at *2 ("misappropriation claims must be brought within three years of 'when the defendant discloses the trade secret or when he first makes use of the plaintiff's ideas" (emphasis added)).

Because Ferring's SAC fails to plead the requisite elements of misappropriation, and is any event untimely, any amendment would be futile.

## VII. Count 14 (Unfair Competition) Remains Time-Barred and is in any event Meritless

With respect to Count 14 for unfair competition, Ferring notes that "the Court's rationale for dismissing Count 14 is not clear to Ferring." (Pl. Br. at 22.)

35

Despite Plaintiffs' apparent confusion, the March 18 Order states that Count 14 was dismissed because it is duplicative of the misappropriation claim (Count 13), which the Court also dismissed.  (See March 18 Order at 40.)

Ferring's amended unfair competition claim remains a duplicate of its amended misappropriation claim. (See SAC ¶ 370 ("Fein and Nardi have unfairly competed with Ferring and misappropriated Ferring's labor, skill, know-how, expenditures and confidential, trade secret, proprietary and privileged information by providing Fein, Allergan, Serenity, and Reprise with such materials in breach of their common law and/or contractual duties to maintain the secrecy of these materials.").)

An unfair competition claim can only survive dismissal of a duplicative misappropriation claim if the two rest on different factual predicates. See Scientific Components Corp. v. Siernza Microdevices, Inc., No. 03-cv-1851, 2006 WL 6937123, at *20 n.21 (E.D.N.Y. July 11, 2006). Since Plaintiffs' claims for misappropriation (SAC ¶ 349) and unfair competition (id. ¶ 371) are virtually identical, if the Court once again finds that the

36

misappropriation claim is deficient or untimely, the unfair
competition claim would also fail.  See Opals on Ice Lingerie v.
BodyLines, Inc., 425 F. Supp.2d 286, 296-97 (S.DN.Y. 2004)
(dismissing unfair competition claim based on misappropriation
as untimely).  Accordingly, because Ferring's misappropriation,
claim even in its amended form remains time-barred[3] and
deficient, see supra 31-35, leave to amend Count 14 remains
futile.

    Regardless, Ferring's claim for unfair competition is
independently without merit.

    A claim for unfair competition based on
misappropriation requires the plaintiff to plead "acts or
omissions by defendants that proximately caused a
misappropriation." Commercial Data Servers, Inc. v. I.B.M.
Corp., 166 F. Supp. 2d 891, 894 (S.D.N.Y. 1991) (quotation marks
and citation omitted). A plaintiff must also "sufficiently
identify the innovations or developments" allegedly
misappropriated "to allow the reader to understand what

---

[3]  Plaintiffs assert, for the third time, that Kwan v. Schlein, 441 F. Supp.2d
491 (S.D.N.Y. 2006) saves the claim. But Kwan is a "reverse passing off"
case, involving a different statutory period than Plaintiffs' unfair
competition claim, which is grounded in misappropriation.

37

specifically was misappropriated and to evaluate [the] plaintiff's property rights in it." See Commercial Data Servers, 166 F. Supp. 2d at 894-95 (emphasis added) (dismissing unfair competition claim with prejudice).

Plaintiffs generalized, conclusory statements fail to specify what or how was misappropriated.  (See SAC ¶ 371.)  For instance, Plaintiffs allege that Fein and Nardi "improperly provided [Allergan] with [] confidential information"—without any corresponding allegation that Allergan "misappropriated the information from them." See Czech Beer Importers, Inc. v. C. Haven Imports, LLC, No. 04-cv-2270, 2005 WL 1490097, at *7 (S.D.N.Y. June 23, 2005) (dismissing plaintiffs' unfair competition claim).  Similarly, Plaintiffs simply assert that Allergan has run desmopressin clinical trials based on "Ferring confidential information" (see SAC at ¶ 118) and that Allergan allegedly misappropriated Ferring's "confidential, trade secret, proprietary, and privileged information," (see id. at ¶ 371), but conspicuously fail to identify *what* innovations or developments that were allegedly misappropriated by Allergan.

These vague statements fail to articulate "specific acts of misappropriation," and thus do not satisfy the pleading

38

standards. See Data Broad. Corp. v. Tele-Communications, Inc.,
No. 92-cv-4840, 1992 WL 350624, at *3 n.4 (S.D.N.Y. Nov. 19,
1992) (emphasis added) (dismissing plaintiffs' unfair
competition claim); see also Carson Optical, Inc. v. Prym
Consumer USA, Inc., No. 11-cv-3677, 2013 WL 1209041, at *6
(E.D.N.Y. 2013) (finding plaintiffs' "conclusory" unfair
competition claims, which "fail to identify specifically the
alleged wrongful conduct undertaken by defendants," as
"insufficient to establish a claim of unfair competition under
New York law").

Accordingly, any amendment to Count 14 would be futile
and leave to amend is denied.

**VIII.   The Proposed Amendments to Count 15 (Conversion) Would
be Futile as to Allergan and Count 15 Remains Time-Barred
as to Fein and Nardi**

Ferring does not add any allegations with respect to
Count 15 that were not previously before the Court or would cure
the time-barred nature of the claim.

The tort of conversion requires that the defendant,
"intentionally and without authority, assumes or exercises

39

control over personal property belonging to someone else."

Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d
387, 395 (S.D.N.Y. 2010).

The Court already dismissed this claim as to Allergan,
because Ferring has not alleged any facts demonstrating that
Allergan intentionally exercised control over Ferring property.
(See March 18 Order at 40.)

The claim also fails because the types of "property"
that Allergan allegedly converted—confidential Ferring documents
and information (SAC ¶ 388), and inventions belonging to Ferring
(id. at ¶ 387)—are not amenable to claims for conversion.  It is
well-settled that "[a] claim for conversion does not lie for the
withholding of indefinite, intangible, and incorporeal species
of property," see Matzan v. Eastman Kodak Co., 134 A.D.2d 863,
864 (4th Dep't 1987), as "an idea alone cannot be converted"
such that it satisfies the required elements. MP Innovations,
Inc. v. Atl. Horizon Int'l, Inc., No. 604133/2007, 2008 WL
7729118 (N.Y. Sup. Ct. 2008) (quotation marks and citation
omitted) (dismissing claim for conversion of "[i]nformation"
comprised of "strategies, a formula, a system, a model,
methodologies and techniques").  Plaintiffs' allegation that

40

Allergan converted Ferring "confidential, trade secret,
proprietary, and privileged information," (see SAC at ¶ 388
(emphasis added)), flies in the face of this rule and would not
survive a motion to dismiss.  MP Innovations, Inc., 2008 WL
7729118, at *1.  This rule remains regardless of whether the
"idea" matures into a patentable invention.  See id.

       Because there is no allegation of definite, tangible
property that was converted by Allergain, the claim must fail
and any amendment would be futile.  See, e.g., Jamison Bus. Sys.,
Inc. v. Unique Software Support Corp., No. 02-cv-4887, 2005 WL
1262095, at *15 (E.D.N.Y. May 26, 2005) (cited by plaintiffs at
Ferring Mot. at 6) (Defendant's "use [of] the source code did
not prohibit plaintiffs from using the code, because defendant
[] took a copy of the code."); Hair Say, Ltd. v. Salon Opus,
Inc., 6 Misc. 3d 1041(A), at *6 (N.Y. Sup. Ct. 2005) (a
conversion action cannot lie when defendants merely possess a
copy of the allegedly converted property).

       As to Fein and Nardi, Ferring contends once again that
Count 15 is timely "because Ferring's conversion claims did not
accrue until Ferring's demands and [Defendants'] refusals in
early 2012." (Cf. Ferring Mot. at 24 with Ferring Opp. to Non-

41

Allergan Motion to Dismiss (Dkt. No. 49) at 13.)  The March 18
Order already concluded that the demand and refusal accrual
period did not apply here because Ferring has alleged the
documents at issue were obtained through unlawful means. (March
18 Order at 41 ("The later accrual period [of demand and
refusal] . . . applies only if defendant's alleged acquisition
of the Ferring documents and patents-in-suit were lawful.").)

Ferring does not add any new facts or allegations that
alter this ruling.  As the March 18 Order held, the statute of
limitations began to run "when the alleged conversion takes
place," which here occurred in 2002 when Nardi and Fein
purportedly retained documents after completing their employment
and/or consultancies.  See supra at 6-8.

Because the proposed amendment to Count 15 would be
futile, leave to amend is denied.

## IX.  The Proposed Amendments to Count 16 (Fraudulent
Concealment) Would be Futile

Ferring maintains that the SAC cures the defects of
its original Count 16, for fraudulent concealment against Fein
and Nardi, which was dismissed in the March 18 Order for failing

42

to allege: (1) "when, where or how" alleged misrepresentations
occurred; (2) any "fraudulent intent with particularity"; and
(3) "that [Plaintiffs'] relied on any specific misrepresentation
or omission by either Nardi or Fein or that such alleged
reliance was reasonable or justifiable." (March 18 Order at 44-
45.)

Plaintiffs, however, fail to add any new allegations
as to Fein, and the new allegations as to Nardi fail to show any
false statements supporting a claim for fraudulent concealment.

As to Fein, Ferring's SAC relies on the same
correspondence that was considered on the motion to dismiss, and
fails to add new allegations evidencing fraudulent intent.

For instance, Ferring's new allegation that "Fein
acted with fraudulent intent in making his affirmative
misrepresentations and his fraudulent omissions," (SAC at ¶ 409)
falls far short of alleging facts giving rise to the required
strong inference of intent under even the most lenient of
standards. In addition, though Ferring's SAC devotes paragraphs
to describing the December 14, 2004 letters from Fein's attorney
to Ferring. (SAC at ¶¶ 404-07), the full contents of these

43

letters were already before the Court on the motion to dismiss[4].
Quoting the text of these letters in the SAC, when they were
already before the Court, does nothing to improve Ferring's
baseless fraudulent concealment claim.

Regardless, Ferring's allegations as to these
letters demonstrate that either Plaintiffs did not conduct an
initial review of the letters, as claimed, or that the review
lacked due diligence and equitable tolling is inapplicable.

The December 14, 2004 letters state that "[w]hatever
Ferring data is set forth in Dr. Fein's subject patent
application comes solely from the text of the UK priority
application filed by Ferring in May 2002" (Reeves Decl. Ex. L)
and "that the new data [in the application] did not emanate from
Ferring" and "came from an independent clinical evaluation
commissioned by Dr. Fein." (Reeves Decl. Ex. M.)  Fein's
attorney likewise noted that "Dr. Fein's published U.S.
application contains data beyond that included in the original
Ferring UK application . . . . We trust you will be able to

---

[4] The letters were incorporated by reference into Ferring's AC and were
annexed to the declaration of Allergan's attorneys in opposition to the
motion. (See SAC at ¶ 75; Declaration of Jeffrey Reeves, "Reeves Decl."; June
29, 2012 (Docket No. 28), Exs. 6, 7; March 18 Order, at 16-18 (summarizing
the correspondence in the factual discussion); Exs. L, M.)

quickly determine for yourself that the new data did not emanate

from Ferring." (Id.) Ferring now alleges that these statements

were false because the application "did in fact 'disclose

information confidential and proprietary to Ferring,'"

"disclosed Ferring information that was not in Ferring's UK

application," and "contained data that emanated from Ferring."

(SAC ¶ 407.) Ferring also alleges, however, that the supposed

fraudulent misrepresentations in these letters occurred

"following Ferring's review of Fein's patent application." (Id.

¶ 405.)


         Ferring thus alleges that, on the one hand, Fein's

patent application "did in fact disclose [] information

confidential and proprietary to Ferring," yet, on the other

hand, acknowledges that it had reviewed Fein's patent

application. If Fein's patent application contained confidential

Ferring information, as Ferring alleged, then Ferring could have

readily determined this, exercising reasonable diligence, after

reviewing the application, as it now claims it did. (SAC ¶ 405)

A party must plead that it was reasonably diligent in

investigating fraud to claim the benefit of equitable tolling.

See C.A. Inc. v. Rocket Software, Inc., 579 F. Supp.2d 355, 361

(E.D.N.Y. 2008).  Either Ferring never conducted the review it

45

claims it did, which is fatal to its equitable tolling theory,

or it conducted a review but, through a lack of reasonable

diligence, failed to recognize that the patent application

contained confidential Ferring information, which likewise is

fatal. Ferring's fraudulent concealment claim is thus, as now

pled, quite literally an admission that Ferring either did not

review the applications as required, or failed to exercise the

reasonable diligence required for equitable tolling.


Even if the SAC's new allegation that Ferring relied

on Fein's attorney's statements in the letters were credited,

Ferring must also allege facts showing that such reliance was

reasonable and justified. The letters do not include a statement

"that Fein's patent applications were not based on any nonpublic

Ferring information." (Non-Allergan Defendants' Opposition

Brief, "Opp. Br."; at 11-12.) Instead, one of the letters states

that "there exists no basis for the assertion that the

publication of Dr. Fein's application has improperly made public

any confidential information of Ferring." (Reeves Decl. Ex. M.)

Thus, if Ferring determined that Fein had disclosed its

confidential Ferring information after threatening to sue him on

this basis, that was not a result of reasonable reliance on

Fein's attorney's statements, but rather was based on Ferring's

46

own review of the patent application and its own judgment. (SAC
¶ 405.)

   With respect to Nardi, Ferring's SAC details
correspondence between Nardi and Ferring during his termination
process. Ferring contends that these correspondences, including
two letters on October 7, 2002 and November 1, 2002,
respectively, provides the required specificity to support its
fraudulent concealment claim, which was previously dismissed in
the March 18 Order for lack of particularity.  (March 18 Order
at 46.)

   First, Ferring asserts that its fraudulent concealment
claim against Nardi is buttressed by additional allegations that
"Nardi intentionally made fraudulent misrepresentations via his
communications with Ferring in the context of his severance from
Ferring" documented the October 7, 2002 letter from Nardi to
Wayne Anderson.  (See SAC Ex. N.) Plaintiffs base this
allegation on the following statement in the October 7, 2002
letter:

>        The transfer of computer files was initiated last
>        week and should be completed later this week on
>        my home systems. As you know the practice I
>        initiated at FPI was to have all data stored in
>        the "Archive." I downloaded copies of electronic
>        files or made working copies of paper files for

> work that I was doing. Consequently the only
> unique files on my computer were the
> presentations created by me based on information
> in the archive. All of this will be deleted from
> my storage disks and transferred to Ferring.

(SAC Ex. N.)  Ferring's SAC states in conclusory fashion that
this statement was "false, fraudulent, and misleading because
Nardi did not 'delete [] from [his] storage disks and transfer
[] to Ferring' the 'copies of electronic files or . . . working
copies of paper files.'" (SAC ¶ 416.)  Ferring does not, though,
allege any facts supporting that Nardi's statement regarding the
manner in which he maintained documents at home is false, or
even that Nardi failed to do exactly what he said he would do in
this letter.  In short, Ferring never points to any allegations
supporting the conclusion that anything stated in the letter is
actually false.

The later correspondence that Ferring submits in
support of its claim against Nardi, the November 1, 2002 letter
Nardi countersigned relating to his termination process,
provides no better support for Ferring's fraudulent concealment
claim.  (SAC Ex. N.)  The letter is so heavily redacted that it
is difficult to fully understand the contents of the document.
One of the few sections of the letter that is not redacted
states in pertinent part:

48

> We are prepared for you to keep the computer
> equipment you have at your home on an "as is"
> basis . . . . It is a condition, however, of the
> transfer of this equipment that you permit a
> Techneto technician to visit your home within
> three (3) days of this letter for the sole
> purpose of removing from the memory of your
> computer all Ferring information. This step
> should not be seen as a lack of trust on our
> part, simply that our technicians can more
> effectively remove the material which might
> accidentally fall into the wrong hands.

(Id.)


    Similarly to the October 7 letter, Ferring does not

allege that any statement that is actually made in the letter is

false. Instead, Ferring alleges that "Nardi did not permit the

removal 'from the memory of [his] computer [of] all Ferring

information'" and that thus the letter contained a false

statement. (SAC ¶ 416.) But the letter does not say that Nardi

will permit or indeed have anything to do with removing Ferring

information from his computer.  What the letter states is that

Nardi will "permit a Techneto technician to visit [his] home

within three (3) days of this letter for the sole purpose of

removing from the memory of [his] computer all Ferring

information."  (SAC Ex. N.)  The letter further details that

Nardi was to defer to the technicians because they can "more

49

effectively remove the material which might accidentally fall into the wrong hands." (Id.)  There is no allegation in Ferring's SAC or otherwise that Nardi failed in this obligation or did not allow the Techneto technician to "visit [his] home," or in any way otherwise obstructed this process.  (Id.)

Because Ferring's new allegations as to both Fein and Nardi fail to plead any fraudulent intent or reliance with any specificity, the proposed amendments would be futile and leave to amend Count 16 is denied. See Woods v. Maytag Co., 2010 U.S. Dist. LEXIS 116595, at *14 (E.D.N.Y. Nov. 2, 2010).

## X. Count 17 (Unjust Enrichment) Remains Time-Barred and is in any event Meritless

Count 17 for unjust enrichment was previously dismissed as time-barred and, independently, because Ferring failed to adequately plead the requisite relationship between Plaintiffs and Allergan, Serenity or Reprise.  (See March 18 Order at 48.)

With respect to the determination that the claim is time-barred, Ferring's only basis for seeking leave to amend is that its fraudulent concealment claim equitably tolls the statute of limitations.  As held, Count 16 was previously

50

dismissed in the March 18 Order and leave to amend that claim is
here denied as futile.  See supra at 40-41.  Accordingly, Count
16 cannot be used to toll Plaintiffs' unjust enrichment claim,
and Count 17 remains time-barred.

Ferring also contends that its amended Count 17 is
appropriate because the SAC clarifies that this claim is also
asserted against Serenity and Reprise, which are "alter-egos" of
Fein and Nardi and thus have the requisite relationship to
support a claim for unjust enrichment.  This theory is likewise
inapplicable.  See supra at 8-10.

Because Ferring has thus failed to show how any
amendments in the SAC would cure the deficiencies in Count 17
articulated in the March 18 Opinion, leave to amend is denied.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion for
leave to amend is denied in its entirety.

It is so ordered.

**New York, NY**
**March 7 , 2014**

_____
**ROBERT W. SWEET**
**U.S.D.J.**