UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
FERRING B.V., FERRING
INTERNATIONAL CENTER S.A., and                    12 Civ. 2650
FERRING PHARMACEUTICALS INC.,
                                                  OPINION and ORDER
                 Plaintiffs and Counter-
                 Defendants,                      UNDER SEAL

      -against-

ALLERGAN, INC., ALLERGAN USA, INC.,
ALLERGAN SALES, LLC, SERENITY
PHARMACEUTICALS CORPORATION,
SERENITY PHARMACEUTICALS, LLC,                    ┌─────────────────────────┐
REPRISE BIOPHARMACEUTICS, LLC,                    │ USDC SDNY               │
SEYMOUR H. FEIN, and RONALD V. NARDI,             │ DOCUMENT                │
                                                  │ ELECTRONICALLY FILED    │
                 Defendants and                   │ DOC #: _____  │
                 Counterclaimants.                │ DATE FILED: 6-15-18     │
------------------------------------------X       └─────────────────────────┘

A P P E A R A N C E S:

      Attorneys for Plaintiffs

      GIBBONS P.C.
      One Gateway Center
      Newark, NJ 07102
      By:  William P. Deni, Jr., Esq.
           Jeffrey A. Palumbo, Esq.

      FINNEGAN, HENDERSON, FARABOW,
      GARRETT & DUNNER, LLP
      901 New York Avenue, N.W.
      Washington, D.C.  20001-4413
      By:  James B. Monroe, Esq.
           Paul W. Browning, Esq.
           Adriana L. Burgy, Esq.
           Charles T. Collins-Chase, Esq.
           Pier D. DeRoo, Esq.

WOMBLE CARLYLE SANDRIDGE & RICE, LLP
Atlantic Station
271 17th St., NW, Suite 2400
Atlanta, GA 30363
By:  John W. Cox, Ph.D.

WOMBLE CARLYLE SANDRIDGE & RICE, LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
By:  Mary Bourke, Esq.

Attorneys for Defendants

JONES DAY
250 Vesey Street
New York, NY 10281-1047
By:  James Sottile, IV, Esq.
     Christopher J. Harnett, Esq.
     Shehla Wynne, Esq.
     Kevin V. McCarthy, Esq.

**Sweet, D.J.**

Plaintiffs Ferring B.V., Ferring International Center S.A., and Ferring Pharmaceuticals Inc. ("Ferring," the "Plaintiffs," or the "Counter-Defendants") have moved for judgment on partial findings to dismiss the counterclaims brought by Defendants and Counterclaimants Serenity Pharmaceuticals Corporation and Serenity Pharmaceuticals, LLC ("Serenity") and Reprise Biopharmaceutics, LLC ("Reprise" and, collectively, the "Defendants" or "Counterclaim Plaintiffs") pursuant to Federal Rule of Civil Procedure 52(c) for lack of standing. In addition to opposing Ferring's motion, Defendants have moved, as an alternative, to substitute Dr. Seymour Fein ("Fein") in place of the current Counterclaim Plaintiffs pursuant to Federal Rule of Civil Procedure 17(a)(3).

This is the latest round in the litigation arising out of the development and patenting of desmopressin, a synthetic version of an antidiuretic human hormone.

Based on the facts and conclusions set forth below, Plaintiff's motion is denied, rendering Defendants' motion moot.

2

**Prior Proceedings**

On April 5, 2012, Ferring commenced this patent
infringement action, alleging inventorship claims over certain
patents owned at the time by then-Defendants Allergan, Ind.,
Allergan USA, Inc., and Allergan Sales, LLC (together,
"Allergan") related to formulations of desmopressin. Dkt. No. 1.
Two years of motion practice followed, resulting in certain of
Ferring's claims being dismissed as time-barred. See generally
Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2016 WL
3390802, at *1 (S.D.N.Y. June 14, 2016) (summarizing the grant
of Allergan's motion to dismiss and denial of Ferring's motions
for reconsideration and leave to file an amended complaint). On
April 3, 2014, Allergan filed counterclaims alleging ownership
over Ferring's desmopressin patents. Dkt. No. 93.

On August 31, 2015, the remainder of Ferring's claims were
dismissed on summary judgment under the doctrine of equitable
estoppel. Ferring B.V. v. Allergan, Inc., 253 F. Supp. 3d 708
(S.D.N.Y. 2015). Certification of judgment for immediate appeal
as to this Court's motion to dismiss and equitable estoppel
decisions was denied. B.V. v. Allergan, Inc., No. 12 Civ. 2650
(RWS), 2016 WL 3390802 (S.D.N.Y. June 14, 2016).

On January 7, 2016, this Court granted, in part, Ferring's summary judgment motion on Allergan's counterclaims, which left the remaining issue for trial whether or not Fein was a co-inventor on U.S. Patent Nos. 7,560,429 ("the '429 Patent") and 7,947,654 ("the '654 Patent," and, with the '429 Patent, the "Ferring Patents"). Ferring B.V. v. Allergan, Inc., 166 F. Supp. 3d 415 (S.D.N.Y. 2016).

In July 2017, following the dissolution of an assignment agreement between Allergan, Serenity, and Reprise, the three parties moved to substitute Reprise and Serenity in place of Allergan as Counterclaim Plaintiffs in this action; at the same time, Ferring moved to dismiss the surviving counterclaims for lack of standing. Dkt. Nos. 263, 269.

On September 14, 2017, the Court granted the substitution motion and denied Ferring's motion with leave to renew. Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2017 WL 4083579 (S.D.N.Y. Sept. 14, 2017) (the "Substitution Opinion"). After reviewing the agreements disputed to have transferred alleged rights in the Ferring Patents—first from Fein to Reprise (the "March 2007 Agreement," DTX 244), then to Allergan (the "Three-

4

Way Agreement," DTX 186), and then back to Reprise and Serenity (the "Dissolution and Reversion," DTX 459, 460)—it was concluded that the contracts could "establish that Fein's intellectual property rights have been transferred," but that there were "factual disputes irresolvable" at the time of the motion. Id., 2017 WL 4083579, at *4-*5. It was noted that language in the agreement transferring certain rights from Reprise and Serenity to Allergan also contained warranties in conflict with the alleged rights transferred. See id. As such, it was concluded that interpretation of the contracts could only be resolved, "and should be addressed," by the parties at trial. Id.

Trial commenced on February 21, 2018, at which time Fein testified. Fein stated that the March 2007 Agreement with Reprise was intended to assign Reprise the "ownership and interest" in his inventions for "low dose and sublingual and other routes of administration that could exploit the low dose hypothesis." Tr. 109:17-19.[1] He stated further that it was not his intention to retain rights in those inventions following the agreement. Tr. 109:23-110:7. Similarly, Fein stated that he had intended the Three-Way Agreement between Reprise, Serenity, and

---

[1]     Citations to "Tr." refer to the transcript of the trial held in this matter on February 21, February 22, and February 26, 2018, and any exhibits referenced therein.

5

Allergan to convey to Allergan the same interests and rights that Fein conveyed earlier to Reprise. Tr. 110:11-112:9.

On cross-examination, Fein made additional statements as to the agreements. Fein testified that the Ferring Patents did not, at the time of the Three-Way Agreement, meet all the stated descriptions of the patent rights to be assigned by Reprise under the agreement. For example, Fein stated that, at the time of the agreement, the Ferring Patents were not in Reprise's "sole and exclusive" ownership as stated to be true under the agreement. Tr. 251:13-252:20. The transferred rights that were returned to Reprise and Serenity from Allergan following the 2017 Reprise Assignment included only certain enumerated patents and did not include the Ferring Patents or discuss the return of any "inventions." Tr. 253:2-255:8.

During cross-examination of Fein, Ferring moved pursuant to Rule 52(c) to dismiss Defendants' counterclaims for lack of standing. Tr. 256:15-257:13. Defendants were given additional time at trial to introduce evidence or testimony on the issue of standing. Tr. 262:7-263:6. Both parties elected to have the issues determined based on the evidence already submitted, at which point a briefing scheduling was agreed upon. Tr. 272:2-

6

276:14. On March 12, 2018, accompanying their motion papers, Defendants moved to join Fein as a Counterclaimant pursuant to Rule 17. Dkt. No. 318.

The motions were heard on April 10, 2018, at which time they were marked fully submitted.

**Facts**

The facts of this action have been set forth in previous opinions of the Court, familiarity with which is assumed. The following facts are summarily recounted only as necessary to resolve the instant motions.

i. The Ferring Patents

In 1987, Ferring introduced oral tablets containing desmopressin, a synthetic hormone used to treat disorders resulting in excessive urine production. Ferring, 166 F. Supp. 3d at 417. After researching the drug's viability throughout the 1990s, Ferring confirmed the feasibility of a quick-dissolving sublingual, or orodispersible, form of desmopressin in 2001.[2]

---

[2] Orodispersible formulations are solid unit dosage forms, which disintegrate in the mouth within a minute due to super disintegrants in the formulation. 166 F. Supp. 3d at 418.

Id. The same year, Ferring decided to develop this formulation

commercially, at which point Dr. Fein joined Ferring as a

consultant. Id.

On May 7, 2002, Ferring filed a Great Britain Patent

Application No. GB0210397.6 (the "GB Application"), for a

"pharmaceutical dosage form of desmopressin adapted for

sublingual absorption," with no inventor named. 166 F. Supp. 3d

at 417. In the following months and years, Dr. Fein and Ferring

filed several patents involving this subject matter. See Ferring

B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2015 WL 5671799,

at *2-*3 (S.D.N.Y. Sept. 22, 2015) (detailing the many Fein and

Ferring patents). Two of Ferring's patents, both of which are

based on the GB Application, are relevant to the present

inquiry. What follows is the history for each.

On September 20, 2002, Ferring filed PCT Application

IB02/04036, claiming the same subject matter as the GB

Application and naming Fein as one of its inventors. F. Supp. 3d

at 418. Fein's position is that he holds the patents on low

dose, sublingual inventions covered by the GB Application. See

Ferring, 2015 WL 571799, at *8; (Declaration of Dr. Seymour

Fein, dated July 24, 2017 ("Fein Decl."), at 2, Dkt. No. 281).

8

On May 7, 2003, Ferring filed a modified PCT Application IB03/02368 (the "PCT Application") that claimed priority to the GB Application, but did not include low dose and sublingual claims. Ferring, 166 F. Supp. 3d at 418. Nor did it name Fein as an inventor. Id.

On June 18, 2009, as a continuation of the PCT Application, Ferring filed U.S. Application No. 10/513,437 (the "'437 Application"), which was issued on July 14, 2009 as the '429 Patent. Id. Also on June 18, 2009, Ferring filed U.S. Application No. 12/487,116 (the "'116 Application") as a continuation of the '437 Application, and to which, on November 6, 2009, a claim was added for "[a]n orodispersible pharmaceutical dosage form of desmopressin acetate which disintegrates in the mouth within 10 seconds." Id. Fein's name was not listed on this application either. Id. On May 24, 2011, the '116 Application issued as the '654 Patent. Id.

ii. The March 2007 Assignment

In March 2007, Fein assigned intellectual property rights in his desmopressin inventions to Reprise, a corporation in

which Fein was a principal and equity partner. See Ferring, 2015
WL 5671799, at *6; (Declaration of Charles R. Collins-Chase,
dated July 10, 2017 ("Collins-Chase Decl."), Ex. C (the "March
2007 Agreement," Dkt. No. 265; Fein Decl., at 3). Fein had also
formed Serenity, through which he and others intended to market
Fein's inventions. 2017 WL 4083579, at *2.

By the terms of the March 2007 Agreement, Fein assigned to
Reprise his entire right in:

> (i) the patent applications listed in Appendix A
> attached hereto (the "Applications" and the inventions
> claimed therein are the "Inventions") and all divisions,
> renewals and continuations thereof, and all United
> States patents which may be granted thereon, and all
> reissues and extensions thereof; (ii) all applications
> for industrial property protection . . . which may
> hereafter be filed for the Inventions (or any of them)
> in any country or countries foreign to the United states
> . . . [and] (iii) all rights, title and interest in the
> Inventions.

(March 2007 Agreement, at Non-AGN 00098046.)

Appendix A to the March 2007 Agreement detailed the rights
in the "Inventions" that were transferred to Reprise.[3] (Id., at
Non-AGN00098046; see id., at Non-AGN00098048-50.) The
applications listed in Appendix A include Fein's U.S. Patent
Application No. 10/706,100 (the "'100 Application"), which

---

[3] While the March 2007 Agreement refers to "Appendix A," on which
the enumerated patents are listed, that portion of the agreement
is titled "Schedule A."

10

issued on September 21, 2010, as U.S. Patent No. 7,799,761 (the "'761 Patent"). The 761 Patent provides:

In one aspect, the present invention is directed to a pharmaceutical composition, comprising 0.5 ng to 20 ng desmopressin and a pharmaceutically acceptable carrier . . . . In another aspect, the present invention is directed to a method of treating or preventing a disease or condition which is treatable or preventable by desmopressin, the method comprising administering to a patient a daily dose of a therapeutically effective amount of a pharmaceutical composition comprising 0.5 ng to 20 ng desmopressin and a pharmaceutically acceptable carrier.

(Declaration of Christopher J. Harnett dated July 24, 2017

("Harnett Decl."), Ex. 4, at FERALL0000075, Dkt. No. 280; see

id., FERALL0000063.). The 761 Patent claimed priority over the

GB Application (See id., at FERALL0000063.) Appendix A does not,

however, list either of the Ferring Patents by patent number.

Appendix A includes an abstract, which describes the rights

that were to transfer from Fein to Reprise:

The present invention is directed to a pharmaceutical composition comprising 0.5 ng to 20 ng desmopressin and a pharmaceutically acceptable carrier. The present invention is also directed to a pharmaceutical composition comprising desmopressin and a pharmaceutically acceptable carrier, wherein the pharmaceutical composition is effective to establish a steady serum desmopressin concentration in the range of from about 0.1 picograms desmopressin per mL serum to about 10 picograms desmopressin per mL serum. Articles of manufacture and methods of using the above invention are also disclosed.

(March 2007 Agreement, at Non-AGN0009850.)

11

### iii. The Three-Way Agreement and the March 2010 Agreement with Allergan

On March 31, 2010, Allergan entered into agreements with Reprise and Serenity to assist with the development of low dose desmopressin formulations, which culminated in several agreements to assign all rights, title, and interest in Fein's desmopressin inventions from Reprise and Serenity to Allergan. See Ferring, 2015 WL 561799, at *7; (Collins-Chase Decl., Ex. B (the "Three-Way Agreement); Declaration of Shehla Wynne dated July 11, 2017 ("Wynne Decl."), Ex. 2 (the "March 2010 Agreement"), Dkt. No. 271).

The Three-Way Agreement states, in relevant part, that Reprise "hereby assigns, and shall assign, to Allergan, Inc. all of its right, title and interest in, to, and under the Assigned Reprise Patent Rights." (Three-Way Agreement, at AGN_FER000004989.) The Three-Way Agreement defines Assigned Reprise Parent Rights as:

> (a) the Patents set forth on Exhibit 1.2, including without limitation any extension, substitution, registration, confirmation, reissue, re-examination or renewal thereof, (b) the Patent Applications set forth on Exhibit 1.2 and all Patents which may be granted thereon, including without limitation a reissue application, a re-examination application, a continuation application, a continued prosecution

12

application, a continuation application, a continued prosecution application, a continuation-in-part application, a divisional application, or any equivalent thereof, (c) any and all Patents and Patent Applications Controlled by Reprise that Cover any Product or any of the inventions described in the Patents and Patent Applications described in Section 1.2(a) and (b) or claiming the benefit of the priority of any Patents or Patent Applications described in Section 1.2(a) and (b), and (d) all foreign or international equivalents of any of the foregoing in any country in the Territory.

(Id., at AGN_FER000004985.)

The Three-Way Agreement defines "Control" as "the right to grant a license or sublicense . . . without violating the terms of any agreement or other arrangement with, or any legal rights of, or without requiring the consent of, or payments to, any Third Party." (Id., at AGN_FER000004986.)

Exhibit 1.2 of the Three-Way Agreement lists the '100 Application but does not list any Ferring parents or applications. (Id., at AGN_FER000005010).[4] The March 2010 Agreement does not list any Ferring patents or applications at the agreement's Exhibits 1.8 and 1.9, the sections detailing

---

[4]     The patent assignments in Exhibit 1.2 of the Three-Way Agreement are identical to the assignments listed in the relevant assignment sections of the March 2010 Agreement. (See Collins-Chase Decl., Ex. E, at 103:22-105:11, 111:21-112:13.)

13

assigned Reprise and Serenity patent rights to Allergan. (See March 2010 Agreement, at AGN_FER0000051390-40.)

Lastly, the Three-Way Agreement provided Allergan worldwide exclusive licensing rights to "develop, make, have made, use, sell offer to sell, and import Products," including "any product formulated to deliver" low dose desmopressin. (Three-Way Agreement, at AGN_FER000004988-89.)

## iv. The 2017 Dissolution and Reversion

On March 6, 2017, the Food and Drug Administration ("FDA") approved a new product developed by Allergan and Serenity, at which point Allergan chose to exercise its contractual option to withdraw from the Three-Way Agreement and the March 2010 Agreement. (See Wynne Decl., Ex. 1, at 3; Declaration of Shehla Wynne dated August 1, 2017 ("Wynne Decl. 2"), Ex. 3, Dkt. No. 291.) Under those terms, all of the rights, title, and interest acquired by Allergan under the Three-Way Agreement reverted to Reprise and Serenity effective May 28, 2017. (See March 2010 Agreement § 13.5(b); Three-Way Agreement, at AGN_FER000005003.)

14

**The Applicable Standards**

To challenge inventorship under 35 U.S.C. § 256, a party must meet the "requirements for constitutional standing—namely injury, causation, and redressability." Larson v. Correct Craft, Inc., 569 F.3d 1319, 1326 (Fed. Cir. 2009). The standing question in every federal case is "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." Warth v. Seldin, 422 U.S. 490, 498 (1975) (citing Baker v. Carr, 369 U.S. 186, 204 (1962)).

A plaintiff challenging inventorship meets her Article III burden by showing an "ownership interest" in the patent, 569 F.3d at 1327, a "concrete financial interest" in the patent, Chou v. Univ. of Chicago, 254 F.3d 1347, 1359 (Fed. Cir. 2001), or a "concrete and particularized reputational injury" arising from the omission as a named inventor on the patent, Shukh v. Seagate Tech., LLC, 803 F.3d 659, 663 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2512 (2016).

In the context of patent ownership assignments, federal law requires that such conveyances be in writing. See Advanced Video

15

Techs., 103 F. Supp. 3d at 417 (citing 35 U.S.C. § 261); see also Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1366 (Fed. Cir. 2010) ("[A]n appropriate written assignment is necessary to transfer legal title from one to the other.").

Under Rule 52(c), a court may render judgment against a party if the evidence "has been fully heard on an issue" and "the court finds against the party on that issue." Fed. R. Civ. P. 52(c). Under such circumstances, it is proper to "enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). Instead of considering the evidence in the light most favorable to the non-moving party, a court is to resolve the relevant conflict and "determine for itself where the preponderance of the evidence lies." Pal v. N.Y. Univ., 2013 WL 4001525, at *7 (S.D.N.Y. Aug. 6, 2013), aff'd, 583 Fed.Appx. 7 (2d Cir. 2014).

While is well-established that a district court must generally make "a determination that the plaintiff has Article III standing before deciding a case on the merits," All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir. 2006) (quoting Steel v. Citizens for a Better

Environment, 523 U.S. 83, 101 (1998), when evidence of standing "overlaps with evidence on the merits," a court may "make its jurisdictional ruling at the close of the evidence." See Id. at 88 (citing Land v. Dollar, 330 U.S. 731, 739 (1947).

Federal Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "[T]he modern function of [Rule 17] . . . is [ ] to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 421 (2d Cir. 2015) (quoting Fed. R. Civ. P. 17 advisory committee's notes). Rule 17(a)(3) provides a plaintiff an opportunity to amend, however, stating that at a court

> may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). "The dismissal provision in Rule 17(a)(3) was added later to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party

in whose name the action should be brought." Cortlandt St. Recovery Corp., 790 F.3d at 421 (internal quotation marks and citation omitted). "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997).

## Plaintiff's Motion for Rule 52(c) Judgment on Partial Findings is Denied

The September 2017 Substitution Opinion contained preliminary determinations regarding the effect of the three assignment agreements: first from Fein to Reprise in the March 2007 Assignment, second from Reprise to Allergan in the Three-Way Agreement, and third from Allergan back to Reprise in the 2017 Dissolution and Reversion. Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2017 WL 4083579, at *4 (S.D.N.Y. Sept. 14, 2017) ("After a review of the assignment agreements, each can establish that Fein's intellectual property rights have been transferred."). However, the Opinion, at that preliminary juncture, did not contain findings as to the scope of the assignments. Id. Nor was there a ruling on standing. Id. at *5

("As such, the question of standing is best resolved at trial[.]").

Ferring takes the position in its briefing that each of the three assignments outlined above failed to transfer "any alleged rights in Ferring's patents." See Dkt. 317, at 10-19. For this reason, Ferring argues, "no party has had standing at any point during the pendency of the counterclaims." Id. at 19.

The bulk of Ferring's brief is spent arguing that both the 2010 Three-Way Agreement and the 2017 Dissolution and Reversion failed to transfer any rights in the Ferring Patents. See id. at 12-19. On both points Ferring is correct. But that is not the whole answer. For purposes of the instant motion, so long as Fein transferred the entirety of his rights in low-dose desmopressin—within which any rights in the Ferring Patents existed—to Reprise and Serenity in the first instance, Reprise and Serenity now have a "concrete financial interest" sufficient to maintain standing. Chou v. Univ. of Chicago, 254 F.3d 1347, 1359 (Fed. Cir. 2001).

## a. Counterclaim Plaintiffs Have Presented Sufficient
## Evidence to Establish Article III Standing

After further review of the assignment agreements, along
with extrinsic evidence presented at trial and submitted to this
Court regarding the March 2007 Agreement, Reprise and Serenity
have demonstrated Article III standing sufficient to maintain
their counterclaims at trial. Fein's intellectual property
rights in the Ferring Patents, to the extent they existed, were
assigned entirely to Reprise and Serenity in the 2007 Agreement.

The Three-Way Agreement, on the other hand, did not
transfer the same set of property rights as did the initial
transfer from Fein to Reprise. That agreement was considerably
narrower in scope and unambiguous in substance. The intellectual
property that was transferred in the Three-Way Agreement fell
into two categories: enumerated patents and patent applications—
which did not include the Ferring Patents—and other intellectual
property rights that were in Reprise and Serenity's exclusive
control. Because the Three-Way Agreement did not transfer the
rights Reprise and Serenity now claim in the Ferring Patents to
Allergan, it follows that the Dissolution and Reversion from
Allergan back to Reprise and Serenity is not germane to the

instant motions. Reprise and Serenity were properly assigned

Fein's full set of intellectual property rights—the precise

scope of which has not yet been determined. Counterclaim

Plaintiffs thus have a "concrete financial interest" in the

Ferring Patents. Chou v. Univ. of Chicago, 254 F.3d 1347, 1359

(Fed. Cir. 2001).

## b. The March 2007 Agreement Assigned the Entirety of Fein's Rights in Low-Dose Desmopressin to Reprise and Serenity

As was determined in the 2017 Substitution Opinion, Dr.

Fein's failure to explicitly reference the Ferring Patents in

his March 2007 Agreement does not require the conclusion that

such rights to the Ferring Patents—if any—did not transfer to

Reprise and Serenity. The omission was reasonable for two

reasons: first, neither of Ferring's patents had been issued at

the time; and second, Fein did not then believe that Ferring was

stating a claim to his claimed inventions.  See Ferring B.V. v.

Allergan, Inc., No. 12 Civ. 2650 (RWS), 2017 WL 4083579, at *4

(S.D.N.Y. Sept. 14, 2017);(Harnett Decl., Exs. 2-3; Fein Decl.,

at 2-3); see also Ferring, 2015 WL 5671799, at *8 (S.D.N.Y.

Sept. 22, 2015).

Appendix A to the March 2007 Assignment listed Fein's then-pending applications and already-issued patents, including the '100 Application, which claimed intellectual property rights to the same underlying subject matter as the GB Application—that which is contested by the parties today. The Agreement "assigns to [Reprise]...the entire right, title and interest in and to (i) the patent applications listed on Appendix A attached hereto (the "Applications" and the inventions claimed therein are the "Inventions")," (D.I.294 at 7), constitutes evidence of intent to transfer more than just the listed patents from Appendix A. Inclusion of the expansive "Inventions" language militates against a narrow reading of the assignment and suggests that Fein intended to transfer the entirety of his intellectual property rights—both then-existing and not-yet-discovered—in low dose desmopressin. Whether such transferred rights include a viable claim of inventorship over the Ferring Patents, a question that goes to the heart of the merits, remains to be seen. The rights that have been transferred are sufficient to establish standing.

Parties' use of broad, imprecise contract language suggests two things: first, that it was Fein's intent to transfer all of his rights in low dose desmopressin; and second, that the

contract contains some level of ambiguity, at least insofar as the meaning of "inventions." See Compagnie Financiere v. Merrill Lynch, 232 F.3d 153, 158 (2d Cir. 2000) ("Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."). As such, Fein's testimony at trial,[5] as well as his July 2017 declaration,[6] serves to establish Reprise and Serenity's concrete financial interest in the Ferring Patents. See id. (citing Sayers v. Rochester Tel. Corp, 7 F.3d 1091, 1094 (2d Cir. 1993); Schurr v. Austin Galleries of Illinois, Inc., 719 F.2d 571, 576 (2d Cir. 1983) ("[B]ecause the language is ambiguous as to the intent of the parties, we deemed it necessary to read [extrinsic evidence]"); see also Korff v. Corbett, 794 N.Y.S.2d 374, 377

---

[5]    Q.   Did you intend when you signed [the March 2007 Assignment] to retain any rights in your inventions yourself personally?

A.    No. My belief and understanding was that I was assigning all of my inventions. Tr. 109-10:23-1.

[6]    Fein represented in his July 2017 declaration that, "On March 1, 2007, I assigned all of my right, title and interest in my desmopressin inventions to Reprise Pharmaceuticals, LLC. . . .Through this agreement, I intended to transfer, and did in fact transfer, all of my rights in any low-dose, low blood concentration desmopressin and sublingual administration of desmopressin inventions to reprise. The rights transferred included all my rights in my inventive contribution to U.S. Patent Nos. 7,560,429 and 7,947,654." Fein Decl. at 3.

23

(N.Y. App. Div. 2005) ("To the extent...an agreement's terms may be ambiguous, indefinite or uncertain, it is well settled that extrinsic or parol evidence is admissible to determine their meaning"); see also First Dev. Corp. v. Delco Plainview Realty Assocs., 600 N.Y.S.2d 105, 106 (N.Y. App. Div. 1993) ("[W]here a written agreement is ambiguous, extrinsic and parol evidence may be considered to determine its purpose and intent.").

## c. The Three-Way Agreement Did Not Transfer Fein's Purported Rights in the Ferring Patents

The Three-Way Agreement, on the other hand, is considerably narrower with regard to the rights being transferred. For example, the rights assigned were limited to enumerated applications in Exhibit 1.2, and, in addition, "any and all Patents and Patent Applications Controlled by Reprise...." Three-Way Agreement, at AGN_FER000004985. "Control" is defined as "the right to grant a license or sublicense. . .without violating the terms of any agreement or other arrangement with, or any legal rights of, or without requiring the consent of, or payments to, any Third Party." Id. This restrictive language explicitly limited assigned rights to those over which Reprise and Serenity had "control."

In the Substitution Opinion, it was noted that the inconsistencies between Fein's stated intent in entering into the Three-Way Agreement and the restrictive language of the agreement itself presented "factual disputes irresolvable on the instant motion [that] should be addressed at trial." See Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2017 WL 4083579, at *5 (S.D.N.Y. Sept. 14, 2017). Reprise and Serenity having had ample opportunity to reconcile these inconsistencies, and having failed to do so, the Three-Way Agreement can now be interpreted as an unambiguous, fully integrated assignment that operated to transfer an enumerated list of "Patents and Patent Applications," in addition to desmopressin-related intellectual property over which Reprise and Serenity had exclusive, unencumbered control. Three-Way Agreement, at AGN_FER000004985.

The Three-Way Agreement represents and warrants that Reprise is the "sole and exclusive owner" of the "Assigned Reprise Patent Rights," which were, as of the effective date, "free and clear of any security interests, claims, encumbrances, or charges of any kind." Three-Way Agreement, at AGN_FER000004999. The evidence so far presented establishes that Reprise and Serenity's rights in the Ferring Patents—to the extent they exist—were not then, and are not now, "free and

clear" of "any security interests, claims, encumbrances, or charges." Id. As such, the Three-Way Agreement cannot be fairly interpreted to include such then-encumbered, unenumerated rights in the Ferring Patents.

Under New York contract law, the Three-Way Agreement's unambiguous language prevents consideration of extrinsic evidence regarding Fein's intent. See W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 163 (1990) ("It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.") (internal quotations omitted) (citing Intercontinental Planning v. Daystrom, Inc., 24 N.Y.2d 372, 379 (1969)). Thus, Fein's statements of intent cannot operate to contradict the terms of the Agreement, which is unambiguous in what it does, but more importantly what it does not, transfer.

To conclude, the March 2007 Agreement sought to transfer from Fein to Reprise and Serenity the entirety of Fein's intellectual property rights in low-dose desmopressin. See discussion supra. Certain of those rights then transferred to Allergan in the Three-Way Agreement. By its unambiguous terms,

and the language of limitation employed, the Three-Way Agreement
had the effect of transferring some, but not all, of Reprise and
Serenity's rights in low-dose desmopressin, namely the
enumerated "Patents and Patent Applications described in Section
1.2(a) and (b)." Three-Way Agreement, at AGN_FER000004985. Thus,
whatever rights Fein had in the Ferring Patents prior to the
2007 Agreement—if any—were transferred to, and are now held by,
Counterclaim Plaintiffs Reprise and Serenity. The claim of
inventorship, which is to be litigated at trial, represents
Reprise and Serenity's "concrete financial interest" required
for Article III standing.[7] Chou v. Univ. of Chicago, 254 F.3d
1347, 1359 (Fed. Cir. 2001). While valid inventorship is
ultimately dispositive on the standing question, it is to be
determined at the close of evidence.

---

[7]     To the extent this Court's factual findings uncover a
historical standing defect as to Allergan in its position as
Counterclaim Plaintiff in 2014, that defect was cured by this
Court's 2017 Substitution Opinion. See Mentor H/S, Inc. v. Med.
Device All., Inc., 244 F.3d 1365, 1373 (Fed. Cir. 2001)
(resolving temporal gap in standing by joining intellectual
property licensee: "such joinder cures a technical
jurisdictional defect"); see also Caterpillar Inc. v. Lewis, 519
U.S. 61, 73 (1996) (where a "*jurisdictional* defect was
cured...before the trial commenced," and "federal subject-matter
jurisdiction [exists] at the time of trial," dismissal for lack
of standing is improper).

Defendant's motion for judgment on partial findings under Rule 52(c) is denied.

## **Counterclaim Plaintiffs' Motion for Ratification or Joinder is Dismissed**

Article III standing having been established, Counterclaim Plaintiffs' Rule 17 Motion is dismissed as moot at this time.

## Conclusion

For the reasons set forth above, Ferring's motion for judgment on partial findings is denied and Reprise and Serenity's motion for substitution of parties is dismissed as moot.

In light of the protective order entered in this case (Dkt. 124), the parties are directed to jointly submit a redacted version of this Opinion to be filed publicly within one week of the date of this Opinion.

Parties are ordered to meet and confer on the resumption of trial.

It is so ordered.

**New York, NY**
**May 24 2018**

ROBERT W. SWEET
U.S.D.J.

29