UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
FERRING B.V., FERRING
INTERNATIONAL CENTER S.A., and                    12 Civ. 2650
FERRING PHARMACEUTICALS INC.,
                                                  OPINION and ORDER

          Plaintiffs and Counter-
          Defendants,

     -against-

ALLERGAN, INC., ALLERGAN USA, INC.,
ALLERGAN SALES, LLC, SERENITY
PHARMACEUTICALS CORPORATION,
SERENITY PHARMACEUTICALS, LLC,
REPRISE BIOPHARMACEUTICS, LLC,
SEYMOUR H. FEIN, and RONALD V. NARDI,

          Defendants and
          Counterclaimants.
------------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiffs

          GIBBONS P.C.
          One Gateway Center
          Newark, NJ 07102
          By:   William P. Deni, Jr., Esq.
                Jeffrey A. Palumbo, Esq.

          FINNEGAN, HENDERSON, FARABOW,
          GARRETT & DUNNER, LLP
          901 New York Avenue, N.W.
          Washington, D.C.  20001-4413
          By:  James B. Monroe, Esq.
               Paul W. Browning, Esq.
               Adriana L. Burgy, Esq.
               Charles T. Collins-Chase, Esq.
               Pier D. DeRoo, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/18

WOMBLE CARLYLE SANDRIDGE & RICE, LLP
Atlantic Station
271 17th St., NW, Suite 2400
Atlanta, GA 30363
By:  John W. Cox, Ph.D.

WOMBLE CARLYLE SANDRIDGE & RICE, LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
By:  Mary Bourke, Esq.

Attorneys for Defendants

JONES DAY
250 Vesey Street
New York, NY 10281-1047
By:  Christopher J. Harnett, Esq.
     Shehla Wynne, Esq.
     Kevin V. McCarthy, Esq.

Sweet, D.J.

Plaintiffs Ferring B.V., Ferring International Center S.A., and Ferring Pharmaceuticals Inc. ("Ferring," the "Plaintiffs," or the "Counter-Defendants") have moved to certify this Court's May 24, 2018 decision ("Standing Decision" or "Standing Opinion") for interlocutory appeal under 28 U.S.C. § 1292(b) and for a stay pending the outcome of the appeal.

Based on the conclusions set forth below, Plaintiff's motions are granted.

## I.    Prior Proceedings

Familiarity with the facts and the prior proceedings in this action is assumed. See generally Ferring B.V. v. Allergan, Inc., 316 F. Supp. 3d 623 (S.D.N.Y. 2018), Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2016 WL 3390802 (S.D.N.Y. June 14, 2016), Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2016 WL 1319160 (S.D.N.Y. Jan. 7, 2016); Ferring B.V. v. Allergan, Inc., 4 F. Supp. 3d 612 (S.D.N.Y. 2014); Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 RWS, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013); Ferring B.V. v. Allergan, Inc., 932 F. Supp. 2d 493 (S.D.N.Y. 2013). The

2

following summary is provided only as necessary to resolve the instant motion.

On April 5, 2012, Ferring commenced this patent infringement action, alleging inventorship claims over certain patents owned at the time by then-Defendants Allergan, Ind., Allergan USA, Inc., and Allergan Sales, LLC (together, "Allergan") related to formulations of desmopressin. Dkt. No. 1. Two years of motion practice followed, resulting in certain of Ferring's claims being dismissed as time-barred. See generally Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650 (RWS), 2016 WL 3390802, at *1 (S.D.N.Y. June 14, 2016) (summarizing the grant of Allergan's motion to dismiss and denial of Ferring's motions for reconsideration and leave to file an amended complaint). On April 3, 2014, Allergan filed counterclaims alleging inventorship over Ferring's desmopressin patents. Dkt. No. 93.

On August 31, 2015, the remainder of Ferring's claims were dismissed on summary judgment under the doctrine of equitable estoppel. Ferring B.V. v. Allergan, Inc., 253 F. Supp. 3d 708 (S.D.N.Y. 2015). Certification of judgment for immediate appeal as to this Court's motion to dismiss and equitable

estoppel decisions was denied. <u>B.V. v. Allergan, Inc.</u>, No. 12
Civ. 2650 (RWS), 2016 WL 3390802 (S.D.N.Y. June 14, 2016).

On January 7, 2016, this Court granted, in part,
Ferring's summary judgment motion on Allergan's counterclaims,
which left the remaining issue for trial whether Fein was a co-
inventor on U.S. Patent Nos. 7,560,429 ("the '429 Patent") and
7,947,654 ("the '654 Patent," and, with the '429 Patent, the
"Ferring Patents"). <u>Ferring B.V. v. Allergan, Inc.</u>, 166 F. Supp.
3d 415 (S.D.N.Y. 2016).

In July 2017, following dissolution of an assignment
agreement between Allergan, Serenity, and Reprise, the three
parties moved to substitute Reprise and Serenity in place of
Allergan as Counterclaim Plaintiffs in this action; at the same
time, Ferring moved to dismiss the surviving counterclaims for
lack of standing. Dkt. Nos. 263, 269.

On September 14, 2017, the Court granted the
substitution motion and denied Ferring's motion with leave to
renew. <u>Ferring B.V. v. Allergan, Inc.</u>, No. 12 Civ. 2650 (RWS),
2017 WL 4083579 (S.D.N.Y. Sept. 14, 2017) (the "Substitution
Opinion"). After reviewing the agreements purporting to transfer

alleged rights in the Ferring Patents—first from Fein to Reprise
(the "March 2007 Agreement," DTX 244), then to Allergan (the
"Three-Way Agreement," DTX 186), and finally back to Reprise and
Serenity (the "Dissolution and Reversion," DTX 459, 460)—it was
concluded that the contracts could "establish that Fein's
intellectual property rights have been transferred," but that
there were "factual disputes irresolvable" at the time of the
motion. Id., 2017 WL 4083579, at *4-*5. It was noted that
language in the agreement transferring certain rights from
Reprise and Serenity to Allergan also contained warranties in
conflict with the alleged rights transferred. See id. As such,
it was concluded that interpretation of the contracts could only
be resolved, "and should be addressed," by the parties at trial.
Id.

Trial commenced on February 21, 2018, at which time
Fein testified. Fein stated that the March 2007 Agreement with
Reprise was intended to assign Reprise the "ownership and
interest" in his inventions for "low dose and sublingual and
other routes of administration that could exploit the low dose
hypothesis." Tr. 109:17-19.[1] He stated further that it was not

---

[1]     Citations to "Tr." refer to the transcript of the trial
held in this matter on February 21, February 22, and February
26, 2018, and any exhibits referenced therein.

his intention to retain rights in those inventions following the agreement. Tr. 109:23-110:7. Similarly, Fein stated that he had intended the Three-Way Agreement between Reprise, Serenity, and Allergan to convey to Allergan the same interests and rights that Fein conveyed earlier to Reprise. Tr. 110:11-112:9.

On cross-examination, Fein made additional statements as to the agreements. Fein testified that the Ferring Patents did not, at the time of the Three-Way Agreement, meet all the stated descriptions of the patent rights to be assigned by Reprise under the agreement. For example, Fein stated that, at the time of the agreement, the Ferring Patents were not in Reprise's "sole and exclusive" ownership as stated to be true under the agreement. Tr. 251:13-252:20. The transferred rights that were returned to Reprise and Serenity from Allergan following the 2017 Reprise Assignment included only certain enumerated patents and did not include the Ferring Patents or discuss the return of any "inventions." Tr. 253:2-255:8.

During cross-examination of Fein, Ferring moved pursuant to Rule 52(c) to dismiss Defendants' counterclaims for lack of standing. Tr. 256:15-257:13. Accompanying their motion papers, Defendants moved to join Fein as a Counterclaimant

pursuant to Rule 17. Dkt. No. 318. The motions were denied by the Court in its May 24, 2018 Standing Opinion, which found, in part, "whatever rights Fein had in the Ferring Patents prior to the 2007 Agreement—if any—were transferred to, and are now held by, Counterclaim Plaintiffs Reprise and Serenity." Ferring B.V. v. Allergan, Inc., 316 F. Supp. 3d 623, 634 (S.D.N.Y. 2018). In so finding, the Court acknowledged a standing defect that existed from the period between 2014, when Allergan brought its counterclaims against Ferring, and 2017, when Reprise and Serenity were substituted. See id. at n. 4.

On June 22, 2018, Ferring moved to certify for immediate appeal the Standing Opinion under 28 U.S.C. § 1292(b), and for a stay of proceedings pending appellate review. ECF No. 344. The motions were heard on July 18, 2018, at which time they were marked fully submitted.

## II.   **The Applicable Standards**

While "it is a basic tenant of federal law to delay appellate review until a final judgment has been entered," (see Coopers v. Livesay, 437 U.S. 463, 475 (1978)), 28 U.S.C. § 1292(b) ("Section 1292(b)") provides "a means of appealing from

interlocutory orders that are otherwise nonappealable, upon
consent of both the district court and the court of appeals."
Development Specialists, Inc. v. Akin Gump Strauss Hauser & Feld
LLP, No. 11 Civ. 5994 (CM), 2012 WL 2952929, at *2 (S.D.N.Y.
July 18, 2012) (citing Klinghoffer v. S.N.C. Achielle Lauro, 921
F.2d 21, 23 (2d Cir. 1990). Section 1292(b) reads, in pertinent
part, that:

> When a district judge, in making in a civil
> action an order not otherwise appealable under this
> section, shall be of the opinion that such order
> involves (1) a controlling question of law (2) as to
> which there is substantial ground for difference of
> opinion and (3) that an immediate appeal from the
> order may materially advance the ultimate termination
> of the litigation, he shall so state in writing in
> such order.

28 U.S.C. § 1292(b)(numbering added). A District Court must
carefully evaluate the statutory criteria to determine
whether all three exist. See In re MTBE Products Liability
Litigation, No. MDL 1358, 2005 WL 39918, at *3 (S.D.N.Y.
Jan. 6, 2005). "[E]ven where the three legislative criteria
of Section 1292(b) appear to be met, district courts have
unfettered discretion to deny certification." See id. at 2
(internal quotations omitted)(citing National Asbestos
Workers Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d
139, 162-63 (E.D.N.Y. 1999)).

### III. Plaintiff's Motion for a Certificate of Appealability is Granted

#### a. The Standing Opinion Involves a Controlling Question of Law

The first statutory factor under Section 1292(b) is plainly established. "A question of law is controlling if reversal . . . would terminate the action." See Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990). Reversal of the Standing Opinion, in particular the Court's finding of law that Counterclaim Plaintiffs had standing despite a historical standing defect that was remedied before it was acknowledged (the "Standing Finding"), would require dismissal for lack of standing. See Ferring B.V. v. Allergan, Inc., 316 F. Supp. 3d 623, n.4 (S.D.N.Y. 2018); See generally Rent Stabilization Ass'n of City of New York v. Dinkins, 5 F.3d 591, n. 2 (2d Cir. 1993)("District courts in this Circuit have dismissed for lack of standing under Fed.R.Civ.P. 12(b)(1)(lack of subject matter jurisdiction) and 12(b)(6).") (collecting cases); Ayazi v. New York City Bd. Of Educ., No. 98 Civ. 7461, 2006 WL 1995134, at *2 (E.D.N.Y. July 14, 2006) ("Without

standing, this court does not have jurisdiction to hear the claim.").

Because Counterclaim Plaintiffs' inventorship counterclaims are the only pending claims in this action, reversal would require dismissal of the entire action. See Ferring B.V. v. Allergan, Inc., 316 F. Supp. 3d 623 (S.D.N.Y. 2018). Because the Standing Finding involves a controlling question of law, the first element of the Section 1292(b) criteria is established. See 28 U.S.C. § 1292(b) ("When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves (1) a controlling question of law . . .") (numbering added).

### b. There is Substantial Grounds for Difference of Opinion

The question of whether there is "substantial grounds for difference of opinion" is directed at the Court's Standing Finding: that a historical gap in standing, which is acknowledged only after it was cured by a Rule 25(c) substitution, need not result in dismissal. Relevant precedent

guides our conclusion that the Standing Finding presents
substantial grounds for difference of opinion.

The two cases cited by this Court in finding that
recognition of a historical standing defect need not result in
dismissal are Mentor H/S, Inc. v. Med. Device All., Inc., 244
F.3d 1365, 1373 (Fed. Cir. 2001) and Caterpillar Inc. v. Lewis,
519 U.S. 61, 73 (1996). In the Standing Opinion, this Court
wrote in a footnote:

> To the extent this Court's factual findings uncover a
> historical standing defect as to Allergan in its
> position as Counterclaim Plaintiff in 2014, that
> defect was cured by this Court's 2017 Substitution
> Opinion. See Mentor H/S, Inc. v. Med. Device All.,
> Inc., 244 F.3d 1365, 1373 (Fed. Cir. 2001) (resolving
> temporal gap in standing by joining intellectual
> property licensee: "such joinder cures a technical
> jurisdictional defect"); see also Caterpillar Inc. v.
> Lewis, 519 U.S. 61, 73 (1996) (where a "*jurisdictional*
> defect was cured...before the trial commenced," and
> "federal subject-matter jurisdiction [exists] at the
> time of trial," dismissal for lack of standing is
> improper).
>
> Ferring v. Allergan, 316 F. Supp. 3d at n.4.

In Mentor H/S, the Federal Circuit exercised appellate
joinder under Rule 21 to join a third-party licensee of a
medical device patent, after trial, for the purpose of curing a
"technical jurisdictional defect" which existed following the
assignment of intellectual property from Plaintiff to a third

11

party. 244 F.3d at 1373. The Court found that, while Plaintiff Mentor "did not have sufficient rights under its exclusive license to sue in its own name without joining the [licensee]," joinder of the licensee was proper because it would not "prejudice the defendants." Id.

In Caterpillar Inc., the Supreme Court held that subject matter jurisdiction existed where a non-diverse case was first brought in state court and later removed to federal court following dismissal of the non-diverse party. 519 U.S. 61. Removal of the non-diverse party, the Court held, meant that "the *jurisdictional* defect was cured, *i.e.,* complete diversity was established before the trial commenced." Id. at 73. The Court reasoned that, because "no *jurisdictional* defect lingered through judgment in the District Court," the lower court "erred in resting its decision on the absence of subject-matter jurisdiction." Id. (emphasis original).

As Ferring points out, however, the holding in Caterpillar has not been universally extended. Pl. Memo. in Support at 8, ECF No. 344. For example, in Grupo v. Atlas Global Group, the Supreme Court held that the Caterpillar holding was limited to situations where the issue of subject matter

12

jurisdiction was not raised "at any point prior to the verdict or ruling." Grupo v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004). Ultimately, the Grupo court refused to extend Caterpillar to cases where Plaintiff changes citizenship in order to cure a jurisdictional defect. Id.

Movants cite Schreiber Foods v. Beatrice Cheese, Inc. from the Federal Circuit for the position that "a jurisdictional defect cannot be cured by the addition of a party with standing." 402 F.3d 1198. The Schreiber court recognized the "general rule in federal cases" that "plaintiff must have initial standing and continue to have a personal stake in the outcome of the lawsuit," but noted the rule is "not absolute" and that "the Supreme Court's cases are *less than clear as to whether and how a jurisdictional defect can be remedied* in the course of litigation." Id. at 1203 (emphasis added).

In Schreiber, the original Plaintiff assigned its intellectual property rights to another entity before reacquiring the rights prior to the Court's decision and judgment. Id. The Federal Circuit held that Plaintiff had standing to sue because it "regained its stake in the litigation when it reacquired the [relevant patent] before the entry of

13

judgment." Id. Importantly, as Counterclaim Plaintiffs point out in opposition, the Schreiber Court "found it unnecessary to address whether substitution under Rule 25 can cure a standing defect." See Defs. Opp. at 3, ECF No. 345, Schrieber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 n. 6 (Fed. Cir. 2005).

Movants also cite Gerber Sci. Int'l, Inc. v. Satisloh AG, a 2009 District Court case from Connecticut, which noted in dicta that "if [Plaintiff] was not the rightful patent owner when the suit was brought, the case would be dismissed." No. 07-Civ-1382 (PCD), 2009 WL 10689138, at *1. That case involved a grant of a Section 1292(b) motion on the grounds that "a different interpretation of the contracts involved would affect whether [Plaintiff] has standing to bring an infringement suit[.]" 2009 WL 10689138, at *1.

While additional authorities on this question no doubt exist, the above case law presents substantial grounds for disagreement on the question of whether a historical, rather than extant, gap in standing—which was cured in 2017 before it was recognized by the Court in 2018—must result in dismissal.

14

See 28 U.S.C. § 1292(b). It is this question of law that is certified for immediate appeal.

### c. Certification will Materially Advance the Litigation

An immediate appeal is "is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial." See Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth., 358 F.Supp.2d 347, 350 (S.D.N.Y. 2005) (internal footnotes and quotation marks omitted).

On one hand, that certification of Ferring's appeal could result in prompt termination of the action suggests this factor is met. As discussed above, reversal of the Standing Opinion would require termination of the action, rendering any trial on the merits a nullity.

On the other hand, as Counterclaim Plaintiffs suggest, if the Federal Circuit affirms the Standing Opinion, trial will resume at some point in the future, "further delay[ing] trial of the counterclaims filed four years ago," and "delay[ing] the

ultimate termination of this litigation." Def. Memo. in Opp. at
4, ECF No. 345.

The prospect of continuing a trial in which subject
matter jurisdiction is in doubt, however, counsels strongly in
favor of immediate appeal. The "anomaly of a court trying a case
without having jurisdiction to do so" is a potentiality that
should be avoided, for purposes of judicial economy and
fairness. See United States v. Boe, 543 F.2d 151, 160 (CCPA
1976).

## IV.   Plaintiff's Motion for a Stay is Granted

The "determination whether to enter a stay pending an
interlocutory appeal is within the discretion of the district
court." See Sutherland v. Ernst & Young LLP, 856 F.Supp. 2d 638,
640 (S.D.N.Y. 2012) (citing Nken v. Holder, 556 U.S. 418
(2009)). Courts consider four factors when determining whether
to stay a case during the pendency of an interlocutory appeal:
(1) likelihood of success in the appeal; (2) whether the
requesting party would be irreparably injured without a stay;
(3) whether a stay will substantially injure the other parties
interested in the proceedings; and (4) the public interests at

play. Id. at 640. "The first two questions—addressing likely success and irreparable harm to the movant—are the most salient concerns." Id. (citing Nken, 129 S.Ct. at 1761).

First, on the likelihood of success, Ferring contends that "a sufficient likelihood of success exists for the same reasons that justify an interlocutory appeal on standing." Pl. Memo in Support, at 10, ECF. No. 344. Ferring argues that the Standing Finding presents "substantial grounds for disagreement on the proper resolution of Ferring's Rule 52(c) standing motion and whether procedural substitution rules can cure a standing defect." Pl. Memo. in Support at 7, ECF No. 344. Counterclaim Plaintiffs do not dispute this. See Defs. Memo in Opp. at 3 n. 1 ("Serenity and Reprise assume, without conceding, that there is 'substantial ground for difference of opinion' with respect to the Court's determination that they have standing to pursue the counterclaim.").

Second, as to whether Ferring would be irreparably harmed if trial were to proceed with an intermediate appeal pending, the Court finds that it would. Continuation of trial at this stage, with a case-dispositive issue pending on appeal, would drain parties' resources and the Court's. If on appeal the

Federal Circuit reverses this Court's Standing Opinion, trial will have been a nullity, irreparably harming both parties.

Third, no evidence has been adduced to suggest a stay would harm either party. While a stay may prolong this litigation a few months, it has already gone on for nearly seven years. Moreover, trial will be resumed as soon as the Federal Circuit renders a decision on the appeal.

Nor would a stay affect disposition of the recently transferred case from Delaware concerning Ferring's new product, NOCDURNA, which involves different patents. See generally Ferring Pharmaceuticals Inc. et al v. Serenity Pharmaceuticals, LLC, No. 17 Civ. 9922 (D. Del. Dec. 20, 2017), ECF No. 63 ("The only patents currently at issue in the [12-Civ-2650] case are formulations patents, directed to specific tablet formulations. In contrast, the patents in the [17-Civ-9922] case are broadly directed to clinical properties of drug products, including the levels of active ingredients in patients' bloodstreams, and are not limited to particular dosage forms.").

Last, the public interest weights in favor of a stay. It would be a waste of resources—the parties', the Court's, and

the public's—to proceed to a trial that turns out to be a nullity. For this reason, and the reasons above, a stay is warranted. Plaintiff's motion is granted.

## Conclusion

For the reasons set forth above, Plaintiff's motion for a certificate of appealability is granted as to this Court's Standing Finding and its motion for a stay is granted.

It is so ordered.

New York, NY
September 14, 2018

ROBERT W. SWEET
U.S.D.J.